**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————— x

Carolyn Sitt, individually on behalf of  : 
herself and all others similarly situated,  : 
                                         :        **Case No. 15-cv-4199-MKB-MDG**
                         Plaintiff,  : 
v.  : 
                                           : 
Nature's Bounty, Inc., NBTY, Inc.,  :         **ORAL ARGUMENT REQUESTED**
                                           : 
                        Defendants.  : 
                                           : 
                                         : 

—————————————————————— x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jason P. Sultzer, Esq. (Bar ID #: JS4546)
Joseph Lipari, Esq. (Bar ID #: JL3194)
Jean M. Sedlak, Esq. (Bar ID #: JS4895)
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel: (845) 705-9460
Fax: (888) 749-7747

*Counsel for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………....………………………………………………..I

TABLE OF AUTHORITIES………………………….........................................................II-VI

I.    PRELIMINARY STATEMENT……………………………………………..…………………………1

II.   LEGAL ARGUMENT…………………………………………..………………...............3

      12(b)(6) Standard………………………………………………………………………3

      1.   Plaintiff has Standing to Seek Relief under the Nationwide Consumer Protection

           Statutes……………………….………………………………………......……………4

           a)  Defendants are Incorrect that a Finding that Plaintiff Lacks Standing

               relative to the Nationwide Consumer Protection Laws would result in

               Dismissal of all but her Individual

               Claims……………………………………………..……………..……8

      2.   Plaintiff also has Standing to Seek Injunctive Relief……………..………………10

      3.   Plaintiff Has Plausibly Alleged that Defendants' Product Claims are False…….11

           a) The Annexed Scientific Studies……………………………..………….13

      4.   Plaintiff has Asserted Cognizable GBL Causes of Action…………………..…….18

           a) Lead Contamination and USP Compliance…………………..….…...…18

           b) Defendants' Representations about the Product being "Natural" and

              Made with "Only the Finest Quality Herbs and Spices" are Actionably

              False and Misleading……………………………………………...........19

      5.   Plaintiff's Express Warranty Claim is Well-Pled and must Service 12(b)(6)

           Scrutiny…………………………………………………………………….……….21

      6.   Plaintiff's Magnuson-Moss Warranty Claim is Well-Pled and must Survive

           12(b)(6) Scrutiny……………………………………………………….....………….23

      7.   Plaintiff's Fraud Claim is Well-Pled and must Survive 12(b)(6) Scrutiny……......23

      8.   Plaintiff's Unjust Enrichment Claim is Well-Pled and must Survive 129b)(6)

           Scrutiny…………………………………………………………………….……….24

III.   CONCLUSION…………………………………………………………………...……..25

## TABLE OF AUTHORITIES

### Cases

*Abraham v. Volkswagen of Am., Inc.,*
    795 F.2d 238, 249 (2d Cir. 1986)……………………………………………...23

*Ackerman v. Coca-Cola Co.,*
    2013 U.S. Dist. LEXIS 184232, (E.D.N.Y. July 17, 2013)………………..10, 18

*Ackerman v. Coca-Cola Co.,*
    2010 U.S. Dist. LEXIS 73156, (E.D.N.Y. July 21, 2010)…………19, 20, 24, 25

*Altman v. Bayer Corp.,*
    125 F. Supp. 2d 666, 673 (S.D.N.Y. 2000)………………………………….…18

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 612, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)………………..…6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 (2009)……………………………………………..…3, 12, 19

*Ault v J.M Smucker Co.,*
    2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014)…………......…………22

*Bank v. R & D Strategic Solutions, LLC,*
    2013 U.S. Dist. LEXIS 39496 (E.D.N.Y. Mar. 20, 2013)………….……………7

*Belfiore v. P&G,*
    2015 U.S. Dist. LEXIS 38170, at *7 (E.D.N.Y. Mar. 20, 2015)………………10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007)……………………………………………..………3, 12, 19

*Blessing v. Sirius XM Radio Inc.,*
    756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010)………………………………………...5

*Brady v. Basic Research, L.L.C.,*
    2015 U.S. Dist. LEXIS 44229 *11 (E.D.N.Y. Mar. 31, 2015)………..……22, 23

*Briarpatch Ltd., L.P. v. Phoenix Pictures,* Inc.,
    373 F.3d 296, 306, (2d Cir. N.Y. 2004)…………………………………….…..24

*Bruton v. Gerber Prods. Co.*,
    961 F. Supp. 2d 1062 (N.D. Cal. 2013)……………………………....……….21

*Chaluisan v. Simsmetal E. LLC*,
    698 F. Supp. 2d 397 (S.D.N.Y. 2010)……………………………………………24

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017, 1022 (9th Cir. 2008)……………………….…………………..23

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
    790 F.3d 411, 420 (2d Cir. N.Y. 2015)……………………………….……….5

*Cruz v. Fxdirectdealer, LLC*,
    720 F.3d 115, 123 (2d Cir. N.Y. 2013)…………………………………….……9

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. N.Y. 2006), the 2nd Circuit, quoting Newberg on Class
    Actions § 2.7 (4th ed. 2002)……………………………………………….………….4

*Diaz v. Paragon Motors of Woodside, Inc.*,
    424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006)……………………………………23

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
    689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010)………………………………...…21, 22

*Ferring B.V. v. Allergan, Inc.*,
    No. 12-2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013)…………………...25

*Gelb v. Am. Tel. & Tel. Co.*,
    150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993)…………………………………....……11

*Goldemberg v Johnson & Johnson Consumer Cos.*,
    2014 U.S. Dist. LEXIS 47180 * 33 (S.D.N.Y March 27, 2014)………………19

*Goshen v. Mutual Life Insurance Co.*,
    98 N.Y.2d 314, 325 (2002)…………………………………………………..9

*Hazlin v. Botanical Labs., Inc.*,
    2013 U.S. Dist. LEXIS 143663, at *11-12 (S.D. Cal. Aug. 8, 2013)…………12

*Hines v. Overstock.com, Inc.*,
    2013 U.S. Dist. LEXIS 117141, at *11-12 (E.D.N.Y. Aug. 19, 2013)……..….6

*Hishon v. King,*
    467 U.S. 69, 73 (1984)……………………………………………………………….3

*Hughes v. Ester C Co.,*
    930 F. Supp. 2d 439, (E.D.N.Y. 2013)………………………......…………12, 20

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.,*
    701 F. Supp. 2d 356, (E.D.N.Y. 2010)……………………..………………6, 25

*In re Frito-Lay N. Am., Inc.,*
    2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013)………………20, 21

*In re Grand Theft Auto Video Game Consumer Litig.,*
    2006 U.S. Dist. LEXIS 78064, *9 (S.D.N.Y. Oct. 25, 2006)……………………6

*Jovel v. I-Health, Inc.,*
    2013 U.S. Dist. LEXIS 139661, *16-17 (E.D.N.Y. Sept. 27, 2013)…………...15

*Kardovich v. Pfizer, Inc.,*
    97 F. Supp. 3d 131, 136 (E.D.N.Y. 2015)…………………………………11, 12

*Koehler v. Litehouse, Inc.,*
    2012 U.S. Dist. LEXIS 176971, at *6 (N.D. Cal. Dec. 13, 2012)…………10, 11

*Koenig v. Boulder Brands, Inc.,*
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)……………………………………...…22, 23

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds,*
    571 F.3d 672, 676 (7th Cir. Ill. 2009)………………………………………...……4

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions),*
    148 F.3d 283, 306-307 (3d Cir. N.J. 1998)……………………………………...…4

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. Conn. 2012)…………………………………………………5

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815, 831, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)……………………6

*Pangburn v. Culbertson,*
    200 F.3d 65, 70 (2d Cir. 1995)………………………………………………..…25

V

*Pelman v. McDonald's Corp.*,
    396 F.3d 508, 509 (2d Cir. N.Y. 2005)……………………………………...……13

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
    721 F.3d 95, 111 (2d Cir. N.Y. 2013)…………………………………………...……5

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)……………………………………12

*Ramirez v. Dollar Phone Corp.*,
    2009 U.S. Dist. LEXIS 92972, *24-25 (E.D.N.Y. Oct. 1, 2009)……………..……4

*Route v. Mead Johnson Nutrition Co.*,
    2013 U.S. Dist. LEXIS 35069, (C.D. Cal. Feb. 21, 2013)…………..……………12

*Siler v. Louisville & N. R. Co.*,
    213 U.S. 175, 193 (U.S. 1909)…………………………………………………..…7

*Silva v. Smucker Natural Foods, Inc.*,
    2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)………....…………8, 9, 20

*Stewart v. Smart Balance*, Inc.,
    2012 U.S. Dist. LEXIS 138454, (D.N.J. June 25, 2012)…………………………20

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) (Brodie, J)……………..5, 6

*Szymczak v. Nissan N. Am., Inc.*,
    2011 U.S. Dist. LEXIS 153011, at *18 (S.D.N.Y. Dec. 16, 2011)…………………..……3

*Underwood v. Carpenters Pension Trust Fund*,
    2014 U.S. Dist. LEXIS 128543, *9 ( E.D. Mich. Sept. 15, 2014)……………….....4

*Vandenberg v. Adler*,
    2000 U.S. Dist. LEXIS 4050, *32 (S.D.N.Y. Mar. 31, 2000)……………..…23, 24

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015)…………………………………………..22

<u>Statutes</u>

21 U.S.C. §343(r)(6)………………………………………………………………..…17

Fed. R. Civ. P. 9(b)…………………………………………………………………………13

VI

Fed R. Civ. P. 8(a)………………………………………………………………………..……13

Federal Food, Drug and Cosmetic Act Section 403(r)(6)………………………………..……17

FRCP 12 (b)(6)……………………………………………………………1, 3, 19, 21, 23, 24

FRCP 9(b)………………………………………………………………………………12, 13

FRCP 8(a)………………………………………………………………………………12, 13

FRCP 15(a)(2)……………………………………………………………………………………25

Magnuson-Moss Warranty Act…………………………………………………………2, 23

NY GBL §349………………………………………………………………8, 9, 13, 18, 25

NY GBL §350………………………………………………………………..…8, 9, 18, 25

NY GBL §350-a………………………………………………………..…………………8

Rule 23……………………………………………………………………………4, 5, 8

Rule 23(a)…………………………………………………………………………......11

TCPA………………………………………………………………………………...1

VII

## I.    Preliminary Statement

Carolyn Sitt and scores of women across the country were induced to purchase defendants' black cohosh supplements given defendants' representations that the supplements were a natural remedy for alleviating menopausal symptoms. Defendants' representations are demonstrably false and misleading. In fact, as alleged and supported in plaintiff's complaint, the supplements: a) do not work (i.e. black cohosh is no better than a placebo at relieving menopausal symptoms), b) are not what they purport to be (i.e. notwithstanding defendant's on-product labeling, the product contains the immunosuppressant synthetic, magnesium stearate); and c) are contaminated with lead. Simply put, defendants pedal a useless and potentially hazardous product to women looking for a natural way to alleviate menopausal hot flashes, night sweats, and mood swings.

In their moving papers, defendants have mischaracterized plaintiff's complaint, misstated plaintiff's pleading burden, and cherry-picked language from inapposite and distinguishable cases[1]. As set forth below, plaintiff's complaint is well-pled and must survive 12(b) (6) scrutiny for, *inter alia*, the following reasons:[2]

1.    Standing: Whether plaintiff has standing to advance claims on behalf of unnamed class members under the laws of states in which she did not purchase the product is an issue properly considered at the certification stage, not the motion to dismiss stage[3].    Regardless, given that

---

[1] Curiously, defendants also besmirch Carolyn Sitt by implying that her husband's pending California TCPA and fraud lawsuit somehow suggests that she is overly litigious. In fact, one can infer from the allegations in the California suit and the allegations in the case at bar that the Sitts are unafraid to seek redress when taken advantage of by unscrupulous corporations.

[2] Plaintiff withdraws her breach of the implied warranty of merchantability claim and her breach of the implied warranty of fitness for a particular purpose claim.

[3] As explained in the authoritative guide on class action jurisprudence, "…Courts in nearly every circuit have held that the standing issue focuses on whether the class representative (or named plaintiff) is properly before the court, not whether represented parties or absent class members are properly before the court." Newberg on Class Actions, §2.3, p. 8 (2015 supplement).

defendants market and sell the product to consumers throughout the country from their New York warehouses, headquarters and offices, and are ultimately paid in New York, plaintiff's GBL claims can also proceed on behalf of a nationwide class. In addition, and contrary to defendants' arguments, it is well-settled that plaintiffs have standing to seek injunctive relief based on the allegation that the product's labeling is misleading to a reasonable consumer.

2.      Misleading Statements: A plain review of the complaint and the studies annexed thereto reveals that plaintiff has properly alleged that defendants' product representations are false. Further, contrary to defendants' spurious argument, the studies annexed to the complaint do not, in any way, contradict or undermine, plaintiff's claims. Rather, the studies show that black cohash is no better than a placebo at relieving menopause symptoms.

3.      Fraud Claims: Defendants argue that plaintiff's fraud claim is untenable because plaintiff has failed to satisfy the essential claim elements. But, as set forth below, each and every claim element has been pled with the requisite particularity.

4.      Express Warranty Claim: Notwithstanding defendants' contrary assertions, a plaintiff need not be in privity with a defendant to maintain an express warranty claim based on misrepresentations contained in advertising or sales literature. Given plaintiff's factually supported allegations that the product materially deviated from on-product and website representations, plaintiff's breach of express warranty claim must stand.

5.      Magnuson-Moss Claim: Claims under the MMWA stand or fall with a plaintiff's express warranty claims under state law. Plaintiff has adequately alleged that defendants have breached express warranties because the product does not work, contains synthetic ingredients, and is contaminated with lead. Accordingly, plaintiff's MMWA claim is properly pled.

6.      Unjust Enrichment: Plaintiff's unjust enrichment claim is well-pled and is not

duplicative. Moreover, it is inappropriate at the motion to dismiss stage to issue a ruling as to

whether an unjust enrichment claim is duplicative because that question may be answered

through discovery.

Against this backdrop, and as explained more fully below, defendants' motion to dismiss

must be denied.

## II.      Legal Argument

### 12(b) (6) Standard

A motion to dismiss enables the court "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof."

*Szymczak v. Nissan N. Am., Inc.*, 2011 U.S. Dist. LEXIS 153011, at *18 (S.D.N.Y. Dec. 16,

2011). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as

true and draw all reasonable inferences in favor of the pleader. *Hishon v. King, 467 U.S. 69, 73*

*(1984)*. The claims must contain the grounds upon which the claim rests through factual

allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). Further, a plaintiff is obliged to buttress its claims with

factual allegations that allow the court to draw the reasonable inference that defendant is liable

for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). The Supreme Court

cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Here, each of plaintiff's causes of action is well-pled and facially plausible and survives

FRCP 12 (b) (6) scrutiny.

3

## 1. Plaintiff has Standing to Seek Relief under the Nationwide Consumer Protection Statutes

Defendant argues that plaintiff lacks standing to advance claims under the laws of states in which she did not purchase the product. Not so. In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. N.Y. 2006), the 2nd Circuit, quoting Newberg on Class Actions § 2.7 (4th ed. 2002), explained that "passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." The underlying rational for the 2nd Circuit's ruling has been used by courts across the country in finding that the standing issue focuses on whether the class representative is properly before the court, not whether absent class members are properly before the court.[4]

Within this district, *Ramirez v. Dollar Phone Corp.*, 2009 U.S. Dist. LEXIS 92972, *24-25 (E.D.N.Y. Oct. 1, 2009) is instructive. In that case, the court explained that "the issue of standing is a constitutional one and should not be conflated with Rule 23 class action requirements." In explaining its reasoning, the *Ramirez* court cited Newberg on Class Actions § 2:7 (4th ed. 2008), which provides:

> whether or not the named plaintiff who meets individual standing requirements may
> assert the rights of absent class members is neither a standing issue nor an Article III case

---

[4] *See Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 306-307 (3d Cir. N.J. 1998) ("Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense" and holding "absentee class members are not required to make a similar showing, because once the named parties have demonstrated that they are properly before the court, the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.") (internal quotation and citation omitted); *See Underwood v. Carpenters Pension Trust Fund*, 2014 U.S. Dist. LEXIS 128543, *9 ( E.D. Mich. Sept. 15, 2014) ("...standing need not be established for class members who are not the named plaintiff."); *See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 676 (7th Cir. Ill. 2009) ("But as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied. This is true even if the named plaintiff (the class representative) lacks standing, provided that he can be replaced by a class member who has standing. The named plaintiff who no longer has a stake may not be a suitable class representative, but that is not a matter of jurisdiction and would not disqualify him from continuing as class representative until a more suitable member of the class was found to replace him.") (internal quotation and citation omitted).

4

> or controversy issue but depends rather on meeting the prerequisites of Rule 23
> governing class actions. The fact that the plaintiff now seeks to represent the rights of
> absent parties because the case or controversy is common to those parties does not in any
> way create additional constitutional standing requirements. Id.

And, as set forth in *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010),

"the reason that named plaintiffs in a proposed class action bring claims under consumer

protection laws of states where they do not reside is that it allows them to preserve those claims

in anticipation of eventually being joined by class members who do reside in the states for which

claims have been asserted." To that end, the *Blessing* court denied "the portion of defendant's

motion to dismiss that attacks plaintiffs' standing to bring certain state law claims." Id at 461.

In their moving papers, defendants rely on Your Honor's prior decision in *Stoltz v. Fage*

*Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015)

(Brodie, J). But, the standing issues in *Stoltz* were decided *sua sponte* after plaintiff apparently

neglected to respond to arguments that defendants raised "in passing" within a footnote. In

issuing its *sua sponte* decision, the court relied on *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d

Cir. Conn. 2012). But, in *Mahon*, the court was asked to decide whether plaintiff could maintain

claims against "non-injurious defendants" based on the juridicial link doctrine. In the matter *sub*

*judice*, both defendants are alleged to have caused injury. The *Stoltz* court also relied on

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. N.Y. 2015).

But, in that case, the court held that "a purported assignee of a claim must plead a proprietary

interest in that claim, and not simply the ability to pursue the claim on behalf of another, to bring

the claim in his or her own name and satisfy the requirements of constitutional standing." The

*Stoltz* court also relied *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 (2d Cir.

N.Y. 2013). But, in that case the 2nd Circuit affirmed the lower court's dismissal for lack of

standing as to claims arising from offerings of securities not purchased by the sole named

plaintiffs. Here, however, plaintiff has sustained an injury (i.e. premium price paid for a product that was not what it was purported to be) and thus has statutory standing to assert claims.

Notably, the *Stoltz* court also cited *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010), which is instructive. In that case, defendants argued that the named plaintiffs lacked standing to bring claims under the laws of states other than those in which they resided. The court denied defendant's motion and declared that "…the sundry state law claims cannot be dismissed for lack of standing when there is no requirement that the named plaintiffs have standing to bring them. Under the guise of standing, defendant has raised the issues of adequacy of the representatives and whether there are common questions of law or fact that predominate over any questions affecting only individual members. These are issues to be addressed at the class certification stage."

Faced with a similar class action standing issue, the U.S Supreme Court has determined that where class certification issues are "logically antecedent" to standing issues, class certification is properly addressed before standing. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). This reasoning was followed in *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 U.S. Dist. LEXIS 78064, *9 (S.D.N.Y. Oct. 25, 2006), where the court recognized differing opinion but stated that "the better interpretation is to treat class certification as logically antecedent to standing where class certification is the source of the potential standing problems." Further, in *Hines v. Overstock.com, Inc.*, 2013 U.S. Dist. LEXIS 117141, at *11-12 (E.D.N.Y. Aug. 19, 2013), the court explained that

> Courts in this Circuit have held that where class certification is the source of the potential standing problems the issue of standing may be deferred on a motion to dismiss. Here, Defendant's allegation that Plaintiff lacks standing because two return policies were allegedly in place during Plaintiff's proposed class period is inconsequential to the Court's analysis in a motion to dismiss her individual claim. Plaintiff is the "proposed" class

6

> representative for a "proposed" class because the class has yet to be certified by the
> Court. Thus, the analysis herein will not pertain to premature issues regarding class
> certification, but whether Plaintiff can individually establish that she has suffered an
> injury giving rise to her claim. Since Plaintiff has established that she individually has an
> injury that gives rise to her claim, the Court will analyze the merits of her claims below.
> Therefore, Defendant's motion to dismiss on the ground that Plaintiff lacks standing is
> denied. (internal citations and quotations omitted).

Here, class certification is the potential source of the standing problems. Defendant does

not dispute that plaintiff has standing to bring each of her claims here in New York. The

relevant question is thus whether plaintiff's claims are sufficiently similar to those of consumers

from other states, and that question is appropriately answered in the first instance within the

context of a class certification decision. In other words, the court can find that plaintiff has

statutory standing to assert claims and thus avoid unnecessary constitutional adjudication. *See*

*Siler v. Louisville & N. R. Co.*, 213 U.S. 175, 193 (U.S. 1909) ("Where a case in this court can be

decided without reference to questions arising under the Federal Constitution, that course is

usually pursued and is not departed from without important reasons.")

Indeed, the Eastern District routinely creates a line of demarcation between issues that

should be addressed at the motion to dismiss phase and class action issues that should be left to

the certification phase. For instance, in *Bank v. R & D Strategic Solutions*, LLC, 2013 U.S. Dist.

LEXIS 39496 (E.D.N.Y. Mar. 20, 2013), the court was asked to determine whether a putative

class action complaint should be dismissed where a *pro se* plaintiff (who is also an attorney) was

ostensibly seeking to serve as both class representative and class counsel in violation of the long-

standing prohibition on acting in this dual capacity.  The court denied the motion to dismiss and

held that "… this action is still in the pleading stage; Plaintiff has not yet moved for class

certification, nor has Plaintiff indicated that he intends to seek appointment as counsel to the

putative class. Accordingly, the Court declines to address Defendant's arguments concerning the

adequacy of representation requirement at this stage, as those arguments are more properly

7

considered upon a motion for class certification under Rule 23." (internal quotations and citations omitted). In the case *sub judice*, the court should similarly draw a line of demarcation between motion to dismiss issues and class certification issues, and reject defendant's argument that plaintiff lacks standing to sue under consumer protection statutes outside of New York.

## A. Defendants are Incorrect that a Finding that Plaintiff Lacks Standing relative to the Nationwide Consumer Protection Laws would Result in Dismissal of all but her Individual Claims

Even if, *arguendo*, the court were to hold that plaintiff lacks standing as to non-New York consumer protection statutes, this lack of standing would not -- as defendants incorrectly argue -- justify dismissing "all of plaintiff's claims except for her individual New York GBL claims, common law and breach of warranty claims." This is because: a) plaintiff could nevertheless serve as a representative of a New York-only class; and b) given that defendants are New York companies whose deceptive acts and omissions occurred in New York and who are paid in New York, NY GBL §§ 349 and 350 apply to out-of-state consumers.

*Silva v. Smucker Natural Foods, Inc*., supra at \*25-26 is instructive. In that case, involving a New York plaintiff and Ohio defendants (where the standing issue was not before the court), the court held that it was "dismissing Silva's claims under GBL §§ 349, 350, and 350-a [only] on behalf of putative class members who neither viewed the website in New York nor purchased Natural Brew in New York." And, the court allowed Silva's express warranty claim to proceed on behalf of a national class. Id. at a \*31. Here, the court can rule -- as the court did in *Silva* -- that some claims are limited to those putative class members who, like plaintiff, purchased the product in New York or who viewed the product labeling or website in New York and then opted to purchase the product elsewhere.

8

Moreover, in this case, and unlike in *Silva*, New York's GBL statutes apply to class members throughout the United States because defendants market and sell the product to consumers throughout the country from their New York warehouses, headquarters, and offices. *See* Complaint ¶ 47. Consumers who purchased the product outside of New York can avail themselves of New York law if there are adequate New York contacts. As the Court of Appeals explained in *Goshen v. Mutual Life Insurance Co.*, 98 N.Y.2d 314, 325 (2002), "our General Business Law analysis does not turn on the residency of the parties" and "it is not intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state."

The 2nd Circuit addressed the extra-territoriality issue in *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 123 (2d Cir. N.Y. 2013), which involved a New York corporate defendant and a plaintiff who was, at all relevant times, a Virginia resident. The 2nd Circuit held that "our reading of *Goshen* and the cases construing it leads us to conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." The 2nd Circuit then applied this standard to the facts as follows: "the case before us clearly involves a series of allegedly deceptive transactions that occurred in New York and implicate the interests of New York. FXDD is paid in New York and refuses to disburse funds… until it receives a funds redemption form at its New York office…Based on these various alleged ties between the customer transactions and New York, we are persuaded that, at this stage, some part of the underlying transaction . . . occurred in New York State, giving [plaintiff] statutory standing to sue for deceptive practices and false advertising under sections 349 and 350." Id. at 123-124 (internal quotations omitted). Here, defendants market and sell the product to consumers

9

throughout the country from New York, and they are ultimately paid in New York. [5] *See* Complaint ¶ 47. Accordingly, plaintiffs' GBL claims can proceed on behalf of a nationwide class.

## 2.   Plaintiff also has Standing to Seek Injunctive Relief

Defendants argue that plaintiff lacks standing for injunctive relief. This is incorrect. As explained in *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at \*56 (E.D.N.Y. July 17, 2013), "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." Here, a plain review of the complaint reveals that plaintiff has set forth facts sufficient to support her allegations that defendants labeling and marketing is misleading to a reasonable consumer.

Further, in *Belfiore v. P&G*, 2015 U.S. Dist. LEXIS 38170, at \*7 (E.D.N.Y. Mar. 20, 2015), the court explained that if it were to deviate from the holding in *Ackerman* (relative to injunctive relief and standing), it would effectively "denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Accordingly, the court explained that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf. Given plaintiff's dissatisfaction with (defendant's product), it is unlikely he will re-purchase the product again. No information to the contrary has been provided. Based on the law as interpreted, he has standing." *See also*, *Koehler v. Litehouse, Inc.*,

---

[5] Moreover, discovery will uncover the full extent to which the Defendants use and/or have used New York businesses, addresses, or operations in connection with their misrepresentations and deceptions relative to the on-product labeling.

10

2012 U.S. Dist. LEXIS 176971, at *6 (N.D. Cal. Dec. 13, 2012) (concluding that the plaintiff had standing to sue for injunctive relief even though he admitted he did not intend to make another purchase of the product in question because the product did not "boost immunity" as advertised); *see also Gelb v. Am. Tel. & Tel. Co.*, 150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993) ("The fact that Plaintiff is now an 'inactive' cardholder does not strip him of standing to sue nor does he fail to fulfill the 'typicality' or 'adequacy' requirements of Rule 23(a) for this reason. Clearly, Plaintiff alleges he was defrauded by defendants and that the fraudulent practices were ongoing at the time the Complaint was filed."). In the instant matter, plaintiff's allegations are that she was defrauded and that the defendants' practices are continuing. Complaint ¶ 62, 100, 110. Accordingly, plaintiff has standing to seek injunctive relief.

## 3.    Plaintiff Has Plausibly Alleged that Defendants' Product Claims are False

Defendants incorrectly claim that plaintiff is required at the pleadings stage to affirmatively "disprove" defendants' product claims in order to sustain each of her causes of action (including breach of warranty and GBL). This argument is at odds with the relevant case law, including the case law which defendants rely upon in support of their motion.

It is well-established that a plaintiff is only required to *plausibly* allege that a manufacturer's product statements are false. For instance, in *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 136 (E.D.N.Y. 2015), a case relied upon by defendants, the court held that plaintiff failed to plausibly allege false statements or deceptive acts by defendant because the materials annexed to the complaint addressed wholly different health issues than those underlying the allegedly false representations. The court explained that the "stark disconnect" between the complaint allegations and the annexed studies, which plaintiffs "do not squarely address" was fatal to plaintiffs' complaint. This was because plaintiff could not meet the "facial plausibility"

standard set forth in *Iqbal* and *Twombley.* Id at 139. Further, *Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069, (C.D. Cal. Feb. 21, 2013) -- which defendants also heavily rely upon -- is inapposite inasmuch as the *only* scientific evidence offered by the plaintiff in that case was a monograph published by the defendant. *Id.* at *3. And, the monograph itself did not suggest that the defendant's claims were false. *Id.* at *12-14. In stark contrast to plaintiffs in *Kardovich* and *Route*, plaintiff in the case at bar has annexed multiple scientific studies that directly address (and ultimately demonstrate the falsity of) defendants product representations.

Further, relevant case law indicates that whether plaintiff's studies support her claims is an issue of fact that cannot be resolved within the context of a motion to dismiss. *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461-62 (E.D.N.Y. 2013); *Hazlin v. Botanical Labs., Inc.*, 2013 U.S. Dist. LEXIS 143663, at *11-12 (S.D. Cal. Aug. 8, 2013). In *Quinn v. Walgreens Co.*, the court declined to consider on a motion to dismiss whether the plaintiffs' studies supported their allegation that it was biologically impossible for defendant's dietary supplement to provide the represented benefits, reasoning that a motion to dismiss is not the right time to weigh the evidence. *Quinn*, 958, *supra*, at 544. Similarly, in *Hughes v. Ester C Co.*, the court held that the weight that should be afforded to any particular study cannot be decided on a motion to dismiss. *Hughes*, *supra*, at 461-62.

Moreover, defendants conflate FRCP 9(b) and 8(a) pleading standards. Notably, in *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 457-459 (E.D.N.Y. 2013) the court explained that where a party asserts a fraudulent misrepresentation claim-- as distinct from breach of warranty claims and consumer protection claims -- "that party must allege sufficient facts from which a court may infer deception. In other words, the simple allegation that a given statement is

unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for

purposes of showing a deceptive or fraudulent representation." Id. at 459. And, in *Pelman v.*

*McDonald's Corp.*, 396 F.3d 508, 509 (2d Cir. N.Y. 2005), the 2nd Circuit explained:

> N.Y. Gen. Bus. Law § 349 makes unlawful deceptive acts or practices in the conduct of
> any business, trade, or commerce or in the furnishing of any service in this state. A
> private action brought under § 349 does not require proof of actual reliance. Additionally,
> because § 349 extends well beyond common-law fraud to cover a broad range of
> deceptive practices, and because a private action under § 349 does not require proof of
> the same essential elements (such as reliance) as common-law fraud, an action under §
> 349 is not subject to the pleading-with-particularity requirements of Fed. R. Civ. P. 9(b),
> but need only meet the bare-bones notice-pleading requirements of Fed. R. Civ. P. 8(a).
> *Id.* (internal quotations and citations omitted).

Regardless, in the case at bar, plaintiff has fulfilled the FRCP 9(b) and 8 (a) pleading standards

by alleging that plaintiff's claims (i.e. "Helps [to] Alleviate Hot Flashes, Night Sweats and Mild

Mood Changes.") are false and by buttressing those allegations with sound scientific studies.   As

set forth above, plaintiff is not obligated at the pleadings stage to affirmatively "disprove"

defendants' products claims.  But, in any event, a plain review of the annexed scientific studies

indicates that they do, in fact, disprove each of defendants' product claims.

## A) **The Annexed Scientific Studies**

In her complaint, plaintiff cites and annexes several scientific studies (*See* Complaint ¶ 7):

| Newton Study[6] | In 2006, the Annals of Internal Medicine published a report on a one year, randomized, double-blind, placebo-controlled finding that black cohosh was no better than a placebo at alleviating the symptoms of menopause, including night sweats, hot flashes, depression, anxiety, irritability, nervousness, sleep disturbance, fatigue, vaginal dryness, headaches, muscle/joint pain, headache, breast tenderness, palpitations or dizziness/fainting. |
|---|---|
| Geller Study[7] | In 2009, Menopause: The Journal of The North American Menopause Society, published a report on a randomized, double-blind, placebo-controlled clinical trial which concluded that black cohosh was no better than a placebo at relieving the symptoms of menopause, including hot flashes, night sweats, mild mood changes, insomnia, joint pain, or fatigue. |

---

[6] Katherine M. Newton, PhD et al., Treatment of Vasomotor Symptoms of Menopause with Black Cohosh, Multibotanicals, Soy, Hormone Therapy, or Placebo, ANNALS OF INTERNAL MEDICINE at 871-72, 875-76 (2006). Exhibit C to Ripo Declaration.

[7] Stacie E. Geller, PhD et al., Safety and Efficacy of Black Cohosh and Red Clover for the Management of Vasomotor Symptoms: a Randomized Controlled Trial, 16 MENOPAUSE: THE JOURNAL OF THE NORTH AMERICAN MENOPAUSE SOCIETY 1156, at 1160-63 (2009); Exhibit A to Ripo Declaration.

| Pockaj Study[8] | In June 2009, The Journal of Clinical Oncology published the results of a double-blind, randomized, placebo-controlled cross over trial of black cohosh. The trial found no benefit to black cohosh consumption as compared to placebo for alleviating hot flashes, excessive sweating, negative mood swings, nausea, joint or muscle pain, chills headache, nervousness, stomach cramps, dizziness or heaviness in legs. |
|---|---|
| Cochrane Review[9] | In 2012, the Cochrane Review published the most comprehensive meta-analysis and systematic review of studies of the efficacy of black cohosh for relieving the symptoms of menopause. The review found that black cohosh was no better than a placebo at alleviating hot flashes or night sweats associated with menopause.[10] |
| Reed Study[11] | In 2009, the Menopause: The Journal of The North American Menopause Society, published a report that found black cohosh had no effect on reproductive hormones, vaginal epithelium or endometrium. |

A plain review of these studies indicates that black cohosh performed no better than a placebo at alleviating symptoms of menopause. Plaintiff's reference to these studies within the complaint imbue her allegations with enough plausibility to survive defendants' motion dismiss (and indeed these studies actually disprove defendants' product claims). These studies do not, as defendants suggest, acknowledge the existence of scientific studies that substantiate defendants'

---

[8] Barbara A. Pockaj et al., Phase III Double-Blind, Randomized, Placebo-Controlled Crossover Trial of Black Cohosh in the Management of Hot Flashes: NCCTG Trial N01CC, 24 JOURNAL OF CLINICAL ONCOLOGY 2836, at 2837-40 (2006); Exhibit B to Ripo Declaration.

[9] Matthew J. Leach, Vivienne Moore, *Black Cohosh (Cimicifuga spp.) for Menopausal Symptoms*, COCHRANE DATABASE OF SYSTEMATIC REVIEWS at 2, 4, 7, 9-12, 31-32, 39-48 (Sept. 12, 2012). Exhibit D to Ripo Declaration.

[10] Plaintiff's attack Cochrane's reliability.  But, in Trick or Treatment, Singh, Simon and Ernst, Edzard, Norton, 2008, p. 73, the authors explain: "It would be impractical and nonsensical for doctors to read through each research paper and come to their own conclusions. Instead, they rely heavily on those academics who devote themselves to making sense of all this research and who publish conclusions that help doctors advise patients about the best form of treatment. Perhaps the most famous and respected authority in this field is the Cochrane Collaboration, a global network of experts coordinated via its headquarters in Oxford. Firmly adhering to the principles of evidence based medicine, the Cochrane Collaboration sets itself the goal of examining clinical trials and other medical research in order to offer digestible conclusions about which treatments are genuinely effective. Today it consists of 12 centers around the world and over 10,000 health expert volunteers from over 90 countries who trawl through clinical trials in order to help people make well informed decisions by preparing, maintaining, and promoting the accessibility of systematic reviews of the effects of interventions in all areas of health care. Having been in existence for over a decade, Cochrane Collaboration has accumulated a library consisting of the results of thousands of trials and has published hundreds of systematic reviews. It has reputation for independence, rigor, and quality."

[11] Susan D. Reed, MD, MPH, et al., *Vaginal, Endometrial, and Reproductive Hormone Findings: Randomized, Placebo-Controlled Trial of Black Cohosh, Multibotanical Herbs, and Dietary Soy for Vasomotor Symptoms: the Herbal Alternatives for Menopause (HALT) Study*, 15 MENOPAUSE: THE JOURNAL OF THE NORTH AMERICAN MENOPAUSE SOCIETY 51, 51 (2008);  Exhibit E to Ripo Declaration.

14

product claims[12]. Rather, they demonstrate that insofar as there are studies indicating that black cohosh is effective, those studies are seriously flawed and must be wholly disregarded.[13]

Defendants' memorandum is replete with gross mischaracterizations of the studies annexed to the complaint. For instance, the Geller Study did not "specifically recognize" that other clinical studies of black cohosh have shown significant reduction in vasomotor symptoms. In fact, the Geller Study explicitly noted that the other studies purporting to show benefits to black cohosh use were flawed for reasons such as lack of a placebo control group, use of improper systems of measurement, and issues of bias including sponsorship by the manufacturers. *See* Geller Study at 1164. Additional problems with the other studies purporting to show black cohosh benefits were identified in the Cochrane Review and are as follows:

| Osmers 2005 | Failed to identify whether testing was blinded and failed to report or lodge a trial protocol. Also, the study was done on the proprietary formulation of Remifemin, and was sponsored by the manufacturer. Cochrane Review at 11-14. |
| --- | --- |
| Stoll 1987 | Baseline differences existed between testing groups creating a risk of bias, no trial protocol was lodged or reported, the study was conducted on the proprietary formulation of Remifemin, and was sponsored by the manufacturer. Cochrane Review at 10-11, 13-14. |
| Wuttke 2003 | No placebo control group, secondary outcomes were not reported, failure to provide detailed descriptions regarding subject withdrawals or reasons for withdrawal. Cochrane Review at 11, 13-14. |
| Frei-Kleiner 2005 | Failure to provide detailed descriptions of subject withdrawals or the reasons for subject withdrawals, failure to report all secondary outcomes, and baseline differences between treatment groups. Cochrane Review at 11, 13-14, 55. Additionally, this study found that hot flash frequency was worse for the black cohosh group than it was for the placebo control group. Cochrane Review at 14, 55. It also showed no statistically significant difference between the menopausal symptom scores of the black cohosh group or placebo control group. Cochrane Review at 15. Also, the primary efficacy analysis showed no superiority of black cohosh compared to placebo. |

---

[12] Defendants argue that "at best, [these studies] simply reflect the existence of scientific debate." But, defendants do not cite, and research does not reveal, a single case standing for the proposition that plaintiff must prove absolute scientific unanimity.

[13] Defendants argue that the existence of a scientific debate renders the claims expressly preempted. This is incorrect. *See Jovel v. I-Health, Inc.*, 2013 U.S. Dist. LEXIS 139661, *16-17 (E.D.N.Y. Sept. 27, 2013) (rejected defendants' express preemption argument and explaining "the allegedly misleading nature of the representations can be evaluated without relying on any special expertise of the FDA, and a claim that [defendants'] representations are false or misleading does not impose a requirement other than those imposed by federal law.")

| Liske 2002 | Use of an inappropriate comparator group (it was a dose comparison study) and lack of a placebo control group. Cochrane Review at 11, 22, 50. Also, per the study's title, the trial found no systemic estrogenic effects. |
|---|---|
| Nappi 2005 | Lack of placebo control group, used the proprietary formulation of Remifemin, and failed to identify who was blinded or whether interventions were identical. Cochrane Review at 10, 11, 13. |
| Lehmann-Willenbrock 1988 | Lack of placebo control group, it did not mention blinding, did not report participant characteristics at baseline, did not provide detailed descriptions of subject withdrawals or reasons for withdrawal, failed to publish or lodge a trial protocol, and used the proprietary formulation of Remifemin. Cochrane Review at 10, 11, 13, 14. |
| Bai 2007 | Did not use a placebo control group, no trial protocol was published or lodged, and used the proprietary formulation of Remifemin. Cochrane Review at 10, 11. |

Moreover, contrary to defendants' assertions, the Pockaj Study did not endorse the results

of any studies that purportedly found a benefit to black cohosh use. Rather, the Pockaj Study

observed that these were "[s]mall prospective trials . . . conducted in Europe" the results of

which were contradicted by the results of larger, randomized trials. *See* Pockaj at 2836.

Additionally, they tested the proprietary formulation of Remifemin -- which is different from

defendants' formulation -- and were sponsored by the product's manufacturer. [14]  Flaws in these

trials included problems such as, *inter alia*, lack of a placebo control group, lack of blinding,

baseline differences between trial groups, lack of a lodged or reported trial protocol, and baseline

differences between the groups studied.[15]  Nor did the Newton Study endorse the results of any

studies that purportedly found a benefit to black cohosh use. The two trials referenced in the

Newton Study, Stoll 1987 and Wuttke 2003, were deemed unreliable for the reasons provided

above. *See* Newton Study at 875.

Simply put, the studies that purport to show benefits from black cohosh consumption

(and which were addressed and debunked in the studies annexed to the complaint) were

unreliable and thus cannot provide substantiation for defendants' product claims. The court

---

[14] Lieberman S, *A Review of the Effectiveness of Cimicifuga Racemose (Black Cohosh) for the Symptoms of Menopause*, JOURNAL OF WOMEN'S HEALTH 7 (1998); Cochrane at 10-14.
[15] *Id.*

16

should not countenance defendants argument that *any* study, no matter how flawed, biased, and unreliable, is apparently sufficient to substantiate (or, at the very least, create reasonable disagreement about) defendants' product claims. This is because, *inter alia*, defendants' argument flies in the face of the FDA's Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 343(r)(6)), wherein substantiation is defined as "competent and reliable scientific evidence" of the benefits and safety of dietary supplements.[16] Factors considered in determining whether a study substantiates a claim are "study population, design, and conduct (e.g., presence of a placebo control), data collection (e.g., dietary assessment method), statistical analysis, and outcome measures. Generally accepted scientific and statistical principles should be used to determine the quality of the studies used as evidence to substantiate a claim . . . . [evidence that] experts in the relevant area of study would consider competent and reliable." [17] Thus, insofar as defendants want to debate the other clinical studies referenced in the studies annexed to the complaint, this debate can be addressed during the expert phase of the litigation when the court can fulfill its gatekeeper function.

While plaintiff is not obligated at this stage to affirmatively disprove defendants' product claims, a plain review of the studies annexed to the complaint reveals that defendants' product claims have indeed been disproved.

---

[16]http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/dietarysupplements/ucm07 3200.htm at 1.B.
[17] *Id*. at D.

17

**4.    Plaintiff has Asserted Cognizable GBL Causes of Action**

**A. Lead Contamination and USP Compliance**

Defendants have failed to argue that the complaint allegations relative to lead contamination and USP compliance are defective. Instead, defendants debate the truthfulness of the USP compliance issue and whether the product's lead contamination poses a health risk.[18] These are not proper issues for a motion to dismiss as they involve evidence-weighing. In any event, as set forth in the complaint, the absence of any information about lead in the product is an actionable omission, and given the absence of information about lead in the product, the reference to "Only the Finest Quality Herbs and Spices" is an actionable misrepresentation. Moreover, the misleading information about USP compliance is a similarly cognizable misrepresentation.

To state a cause of action under NY GBL §349, a plaintiff must plead that (1) the defendant's conduct was consumer-oriented; (2) the defendant engaged in a materially deceptive and misleading act; and (3) plaintiff was injured by the defendant's act. *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673 (S.D.N.Y. 2000). And, to state a cause of action under NY GBL §350, a plaintiff must plead that an advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury. *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, * 8-10 (E.D.N.Y. July 17, 2013).

Defendants argue that plaintiff has insufficiently alleged that defendant's acts were materially deceptive and/or that plaintiffs were injured (by the undisclosed lead). This argument is flawed. The law in New York is well settled: "injury is adequately alleged under GBL §§ 349 or 350 by stating that a plaintiff paid a premium for a product based on defendants' inaccurate

---

[18] It appears that in response to this litigation, defendants have changed their labeling to add a California Prop. 65 warning.

representations." *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, * 9 n. 5 (E.D.N.Y. July 21, 2010). And, in *Goldemberg v Johnson & Johnson Consumer Cos.*, 2014 U.S. Dist. LEXIS 47180 * 33 (S.D.N.Y March 27, 2014), the court explained that even a bare allegation that Plaintiff paid a premium for the product is sufficient to survive FRCP 12(b)(6) scrutiny. Plainly, plaintiffs fulfill this pleading requirement given that the complaint includes over a dozen references to plaintiff and the class being induced to pay, and actually paid, a premium price for the product. *See* Complaint ¶ 14, 19, 36, 41, 45, 81, 83, 93, 96, 107, 111-112, 124.

This is not a personal injury case and thus the issue of whether the undisclosed lead in defendants' products caused physiological harm is irrelevant. Further, a determination about "what level of lead in the product's capsule is deemed safe" is properly reserved for post-expert discovery motions. Further, determining whether defendants are actually USP compliant is inappropriate at the pleading stage. Plaintiffs have met their pleading burden under the FRCP, as well as under *Iqbal* and *Twombley*, by setting forth facts from which the court can infer that Plaintiffs and the class were induced by defendant's false, consumer-directed representations and omissions to pay a premium price for a lead-contaminated product. Accordingly, Plaintiffs' GBL claims must survive FRCP 12(b) (6) scrutiny.

## B. Defendants' Representations about the Product being "Natural" and Made with "Only the Finest Quality Herbs and Spices" are Actionably False and Misleading

Defendants advance the tenuous argument that no reasonable consumer could possibly believe that "Natural Whole Herb," "Natural Menopausal Relief," and "Only the Finest Quality Herbs and Spices" means that the product is natural. Citing totally inapposite cases, defendants boldly proclaim "as a matter of law, it is obvious to an objectively reasonable consumer that a bottle of black cohosh, containing 100 capsules, contains something other than the whole herbal root itself especially where – as here the plaintiff read on the Product's label that it contained

19

magnesium stearate." Materially identical arguments have been consistently rejected by this court and other courts within the Second Circuit.

In *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013), the court held that "what a reasonable consumer would believe the term 'natural' to mean on a label cannot be resolved on [a] motion [to dismiss]" as it is a "factual dispute." Id. at * 48-49. Further, in *Silva v. Smucker Natural Foods, Inc.*, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015), the court rejected defendant's argument that, as a matter of law, no reasonable consumer could be similarly misled by "Natural Brew," which is a trademarked brand name for root beer. Similarly, in the case at bar, there is no basis for ruling on a motion to dismiss that reasonable consumers could not be misled into believing that "Natural Whole Herb," "Natural Menopausal Relief," and "Only the Finest Quality Herbs and Spices" means that the product is all natural or does not contain artificial ingredients.

Moreover, it is well-settled that on-product ingredient disclosures (e.g. magnesium stearate) do not insulate defendants from liability stemming from otherwise misleading affirmative statements. This is because reasonable consumers are not expected to scour a label to ensure that product representations are not false. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013); ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *see also*, *Stewart v. Smart Balance*, Inc., 2012 U.S. Dist. LEXIS 138454, (D.N.J. June 25, 2012). ("[T]he fact that the labels were literally true does not mean that they cannot be misleading to the average consumer."). Further, in *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *63, (E.D.N.Y. July 21, 2010), the court stated that while information within the ingredient list is "relevant, [it] does not as a matter of law

extinguish the possibility that reasonable consumers could be misled" by the term "natural" on the front of the label. Here, the act of reading the ingredient list on the product label does not, by itself, educate or enlighten a reasonable consumer as to whether the ingredients are actually synthetic or natural. Nor does the act of reading the ingredient list on the product label inform consumers about the health hazards associated with magnesium stearate.

These cases are absent from defendant's brief. Instead, defendant relies heavily on inapposite cases from district courts in the 9th Circuit. For instance, in *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013), the court declined to hold that a reasonable consumer could find a product to be completely natural when the word natural was preceded by "made with." This "made with" verbiage is not included on defendants' product label, and, in any event, this reasoning has been rejected in the Eastern District of New York. See *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, *53-54 (E.D.N.Y. Aug. 29, 2013) ("Here, the label on the Tostitos and SunChips products includes an explanatory ring surrounding the "Made with ALL NATURAL ingredients" center...But to hold as a matter of law that they show no reasonable consumer would be deceived into believing the product is GMO-free is not a conclusion the Court can reach at this stage.")

## 5. Plaintiff's Express Warranty Claim is Well-Pled and must Survive 12 (b)(6) Scrutiny

Given the strength of plaintiff's breach of express warranty claim, defendants have resorted to conflating the elements and pleading standards for express and implied warranty claims by incorrectly arguing that privity is required. "A prima facie claim for breach of express warranty requires plaintiff to show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Fendi Adele S.R.L. v. Burlington Coat Factory*

21

*Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010). In the complaint, plaintiff has alleged that defendants expressly warranted that, inter alia, the product was natural and that it helped alleviate menopausal symptoms. Plaintiff has also alleged that these express warranties were false and that they induced the plaintiff and the class to purchase the product at a premium price. *See* Complaint ¶¶ 137-142.

In *Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (SDNY May 15, 2014), the court held that a representation relative to whether a product is "natural" constitutes "an actionable warranty" and that "a buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." *Id.* at *20-21. And, in *Brady v. Basic Research, L.L.C.*, 2015 U.S. Dist. LEXIS 44229 (E.D.N.Y. 2015), the court denied defendants' motion to dismiss a breach of warranty claim where plaintiff alleged that defendants advertised and marketed weight loss supplements with warranties as to their efficacy, plaintiff relied upon the representations, the warranties were alleged to be false and misleading based upon reliable scientific evidence, and plaintiffs and the proposed class were injured as a direct and proximate result of defendants' breaches. The court indicated that this was sufficient to state a claim. In the case at bar, a plain review of the complaint indicates that plaintiff has similarly pled that defendants' representations were false, plaintiff relied on the representations, and plaintiff was damaged as a result. *See* Complaint, Paragraphs 137-144.

Defendants cite to *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014) for the proposition that privity is required in a breach of express warranty claim. But, as to the express warranty section within the holding, *Koenig* is an outlier case that has been distinguished. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015)

(Declining to follow *Koenig* and explaining "courts have held that a plaintiff need not be in privity with a defendant to bring such a [express warranty] claim based on misrepresentations contained in public advertising or sales literature.")  Further, in *Brady v. Basic Research, L.L.C.*, 2015 U.S. Dist. LEXIS 44229 (E.D.N.Y. 2015), the court cited *Weisblum* in explaining that there is no express warranty privity requirement.

## 6.     Plaintiff's Magnuson-Moss Warranty Claim is Well-Pled and must Survive 12 (b)(6) Scrutiny

Although the MMWA provides a federal class action remedy for express and implied breach of warranty claims, it "merely incorporates and federalizes state-law breach of warranty claims". *Brady v. Basic Research, L.L.C.*, 2015 U.S. Dist. LEXIS 44229 *11 (E.D.N.Y. Mar. 31, 2015) (citations and quotations marks omitted). "[C]laims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, th[e] disposition of [] state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding that a breach of express warranty under the MMWA is coextensive with New York State law).  Given that (as explained in the preceding sections) plaintiff has properly and adequately pled her breach of warranty causes of action, plaintiff's MMWA claim must not be dismissed.

## 7.     Plaintiff's Fraud Claim is Well-Pled and must Survive 12 (b)(6) Scrutiny

The elements of common law fraud are: (1) a false representation of material fact; (2) intent to defraud; (3) reasonable reliance on the representation; and (4) damages proximately caused by the fraud. *Vandenberg v. Adler*, 2000 U.S. Dist. LEXIS 4050, *32 (S.D.N.Y. Mar. 31,

23

2000). Ignoring the plain language of the complaint, defendants incorrectly argue that defendants have failed to plead the essential claim elements. Specifically, defendants assert: "she has failed to plead any details -- much less particularized facts -- with regard to her purchase of the product, defendants' intent to defraud, her reasonable reliance, and resulting harm. This statement is at odds with the text of the 174 paragraph, 54-page complaint. Plaintiff describes her purchase of the product and pleads with the requisite particularity relative to intent, reliance, and harm. *See* Complaint, ¶¶ 45, 129-133. Moreover, as set forth in detail in the preceding section, the plaintiff has fulfilled the FRCP 9(b) pleading standards by alleging that plaintiff's claims (e.g. "Helps [to] Alleviate Hot Flashes, Night Sweats and Mild Mood Changes.") are false and by buttressing those allegations with sound scientific studies.

## 8.     Plaintiff's Unjust Enrichment Claim is Well-Pled and must Survive 12(b)(6) Scrutiny

The basic elements of an unjust enrichment claim in New York, all of which were properly pled in the underlying Complaint, require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures*, Inc., 373 F.3d 296, 306, (2d Cir. N.Y. 2004). Defendant does not dispute that plaintiff has pled and factually supported these elements. Rather, Defendant advances the argument that plaintiff's claim must be dismissed because it is duplicative. As set forth in *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397 (S.D.N.Y. 2010), it is inappropriate at the motion to dismiss phase to issue a ruling as to whether an unjust enrichment claim is duplicative because that question may be answered through discovery. Moreover, this court sustained nearly identical unjust enrichment claims in *Ackerman v. Coca-Cola Co*., 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)

and in *In re Bayer Corp. Combination Aspirin*, 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010), where

it held:

> "[P]laintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment." Here, a plain reading of the Complaint reveals that each of the elements necessary to sustain an unjust enrichment action has been pled.

Further, the statute of limitations period for an unjust enrichment claim is longer than the

statute of limitations periods for GBL §§ 349 and 350 claims. *See, e.g., Ferring B.V. v. Allergan,*

*Inc.*, No. 12-2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ("The limitations period for

unjust enrichment claims is six years"). Thus, an unjust enrichment claim cannot be duplicative

of the GBL claims as it allows for alternative and/or greater relief.

## III.   Conclusion

For the reasons set forth above, plaintiff respectfully requests that the court deny

defendants' motion in its entirety.[19]

Dated: December 30, 2015

### THE SULTZER LAW GROUP, P.C.

By:                /s/ Joseph Lipari

Jason P. Sultzer, Esq. (Bar ID #: JS4546)
Joseph Lipari, Esq. (Bar ID #: JL3194)
Jean M. Sedlak, Esq. (Bar ID #: JS4895)
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
*Counsel for Plaintiff and the Class*

---

[19] If the Court does not deny Defendant's motion to dismiss in its entirety, Plaintiff hereby respectfully requests leave to amend the Complaint pursuant to, *inter alia*, FRCP 15 (a) (2). See e.g. *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1995) ("leave to amend should be freely granted").