UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CAROLYN SITT, individually and on behalf of all
others similarly situated,

                              Plaintiff,

                 v.

NATURE'S BOUNTY, INC. and NBTY, INC.,

                         Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-4199 (MKB)

MARGO K. BRODIE, United States District Judge:

On July 17, 2015, Plaintiff Carolyn Sitt commenced the above-captioned putative class action on behalf of herself and all others similarly situated against Defendants Nature's Bounty, Inc. and NBRT, Inc.. (Compl., Docket Entry No. 1.) Plaintiff alleges claims of (1) deceptive, misleading and false practices and advertising in violation of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350 and 350-a(1), (2) deceptive, misleading and false practices in violation of consumer protection statutes in all fifty states, (3) common law fraud, (4) breach of express warranties pursuant to state law and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (the "MMWA"), (5) and unjust enrichment.[1] Defendants move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim. (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 22; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs.

---

[1] Plaintiff has withdrawn her claims for breach of an implied warranty of merchantability and breach of the implied warranty of fitness. (Pl. Mem. of Law in Opp'n to Defs. Mot. 1 n.2, Docket Entry No. 23.) These claims are therefore dismissed.

Mem."), Docket Entry No. 23-1; Defs. Reply Mem. of Law in Supp. of Defs. Mot. ("Defs. Reply"), Docket Entry No. 24.)

For the reasons set forth below, the Court finds that Plaintiff has Article III standing but does not have standing to seek injunctive relief.  The Court grants in parts and denies in part Defendants' motion to dismiss.  The Court grants Defendants' motion to dismiss Plaintiff's claim for unjust enrichment and denies Defendants' motion to dismiss Plaintiff's claims for fraud, breach of express warranty and violations of the MMWA, as well as Plaintiff's claims under GBL sections 349 and 350.

## I.  Background

The following facts are taken from the Complaint and are accepted as true for the purposes of deciding the motion.  Defendant Nature's Bounty, Inc., a wholly-owned subsidiary of Defendant NBTY, Inc., (Compl. ¶¶ 1, 48), manufactures and sells Black Cohosh 540 mg, (the "Product"), to remedy menopause symptoms, for an "average price of $9.59,"[2] (*id*. ¶ 1). Plaintiff, a resident of Brooklyn, New York, purchased the Product "at retail stores and/or online in the Eastern District of New York." (*Id*. ¶ 45.)  "Prior to purchasing the Product, Plaintiff read the Product's labeling and all of the [] representations on Nature's Bounty's website relevant to the Product." (*Id*. ¶ 45.)

Plaintiff alleges that the labeling and advertising of the Product are deceptive, misleading and false.  (*See, e.g.*, *id*. ¶ 1.)  Plaintiff's allegations center on the inability of the Product to deliver promised remedies for menopause symptoms, the falsity of claims that the Product is

_____

[2]  Plaintiff notes that "comparable black cohosh products are "priced for substantially less:" Swanson Black Cohosh sells for $1.99 "per bottle" and Thompson Black Cohosh for $4.64 "per bottle." (*Id*. ¶ 41.)  Plaintiff does not state that the quantities offered for these prices are consistent across brands.

"natural" and "non-synthetic," and the alleged contamination of the Product with unsafe levels of lead. (*Id.* ¶¶ 1–3.) The packaging of the Product represents that it "Helps Alleviate Hot Flashes, Night Sweats and Mild Mood Changes" and that "Studies document Black Cohosh's ability to help support the physical changes that occur in a woman's body over time." (*Id.* ¶ 6.) Plaintiff alleges that these claims of health benefits are contrary to the fact that "there are no scientifically sound, reliable studies demonstrating that black cohosh can provide any of these benefits" and "reliable studies of black cohosh have demonstrated that it does *not* help to alleviate hot flashes, night sweats, mild mood changes, or any other symptoms of menopause." (*Id.* ¶¶ 7, 8.)

Plaintiff alleges that the labeling of the Product also states that it is made "us[ing] only the finest quality herbs and spices." (*Id.* ¶ 15.) Plaintiff asserts that this representation is contrary to the fact that the Product is "contaminated" with "unsafe levels of lead," as demonstrated by the results of testing by an "independent laboratory" retained by Plaintiff to test the composition of the Product. (*Id.* ¶¶ 15, 16.) Plaintiff also asserts that "[t]here is no safe blood level of lead," explains many health risks of lead consumption, and states that Defendants nonetheless direct customers to consume the Product daily. (*Id.* ¶ 17.)

Plaintiff alleges that the Product is "prominently" labeled to represent that it is a "NATURAL WHOLE HERB" and a "non-synthetic choice for menopausal support" and offers "Natural Menopausal Relief." (*Id.* ¶¶ 20, 21.) Plaintiff asserts that "contrary to Defendants' representations, the Product is not 'natural' or 'non-synthetic'" because it contains magnesium stearate, a synthetic ingredient. (*Id.* ¶ 22.) Plaintiff also asserts that Defendants knew that the Product was neither natural nor non-synthetic and that representing it to have these characteristics would induce consumers to purchase it at a "premium price" based on

perceptions the Product was healthier and safer than products containing synthetic ingredients. (*Id*. ¶¶ 34–36.)

Finally, Plaintiff alleges that, on the Nature's Bounty website, Defendants represent that their "facilities have been successfully audited by the United States Pharmacopeia" (the "USP"), a "scientific nonprofit that sets standards for the identity, strength, quality and purity of dietary supplements" and other products.  (*Id*. ¶ 37.)  Plaintiff asserts that this representation is a warranty as to compliance with the USP's specifications for manufacturing black cohosh and "[g]iven the stature and integrity of the USP, Defendants' representation of USP approval serves as a representation and warranty of the Product's quality."  (*Id*. ¶ 37.)  The results of testing by an "independent laboratory" hired by Plaintiff show that the composition of the Product does not comport with the USP's specifications.  (*Id*. ¶¶ 38–40.)

## II.  Discussion

### a.  Standard of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).  The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

## ii.   Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## b.   Standing

Defendants argue that Plaintiff does not have Article III standing to assert claims on behalf of consumers in states where she does not live and in which she did not purchase the product, and that she does not have standing to seek injunctive relief because there is no threat of

future injury.[3]  (Defs. Mem. 6–11.)  Plaintiff argues that she has Article III standing and, in any event, her ability to represent a nationwide class is not appropriately considered until class certification.  (Pl. Mem. of Law in Opp'n to Defs. Mot. ("Pl. Opp'n") 4–10, Docket Entry No. 23.)  Plaintiff also argues that she has standing to seek injunctive relief because Defendants' conduct is ongoing.  (*Id*. at 10–11.)  The Court considers separately whether Plaintiff, as the named plaintiff in this putative class action, has personally pled Article III standing, and whether Plaintiff has standing to seek injunctive relief.

### i.  Plaintiff's Article III standing

Defendants contend that Article III precludes Plaintiff from asserting claims under the laws of any state other than New York, because Plaintiff does not allege that she purchased or was harmed by the Product in any state other than New York.  (Defs. Mem. 6–10.)  Plaintiff argues that she has demonstrated Article III standing and that Defendants' arguments as to whether or not Plaintiff can assert claims on behalf of a nationwide class can and should be addressed at the class certification stage of the litigation.[4]  (Pl. Opp'n 4–8.)

Article III of the Constitution limits the jurisdiction of federal courts to resolve actual "cases" and "controversies."  U.S. Const. art. III, § 2.  "To have such Article III standing, the plaintiff [must have] alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's

---

[3]  Plaintiff seeks injunctive relief only as to her GBL claims.  (*See* Compl. ¶¶ 85, 101, 113.)

[4]  Plaintiff further argues that, if the Court finds that she lacks standing as to claims outside New York, Plaintiff nevertheless has standing to represent a nationwide class under New York law, because her claims under New York law reach the conduct of Defendants directed at consumers in other states because Defendants are New York companies.  (Pl. Opp'n 8–10.)  Because the Court finds that Plaintiff has satisfied the requirements of Article III standing, the Court declines to address this issue.

remedial powers on [its] behalf." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (alterations in original) (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). Whether a Plaintiff has Article III standing is a threshold question in every federal case that "determine[s] the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. "To satisfy the irreducible constitutional minimum of [Article III] standing, a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks omitted). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Id.* (citations and internal quotation marks omitted).

The Second Circuit has stated that "to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (alterations omitted) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) ("We do not require that each member of a class submit evidence of personal standing."). In *NECA-IBEW*, the Second Circuit explained that the named plaintiff, NECA-IBEW, had Article III standing because it plausibly alleged an injury against it by the defendant, despite the fact that NECA-IBEW also sought to bring claims on behalf of putative class members that NECA "lack[ed] [Article III] standing to assert on its [own] behalf." *NECA-IBEW*, 693 F.3d at 158.

Here, Defendants do not contest that Plaintiff has Article III standing to assert claims under New York law as to all Defendants, and concede that Plaintiff has sufficiently pled that she purchased and was harmed by the Product in New York.  (*See* Defs. Mem. 7.)  Thus, because Plaintiff has standing to assert a claim directly against each of the named Defendants, Plaintiff has satisfied the Article III standing requirement for class actions.[5]  *See NECA-IBEW*, 693 F.3d at 159 (stating that in order to establish Article III standing in a class action there must be a named plaintiff who can assert a claim directly against every named defendant, which the Circuit distinguished from the requirement of class standing, which requires that a plaintiff allege "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class").  Defendants argue that Plaintiff bears a burden within the Article III analysis to further establish standing to bring claims

---

[5]  Defendants rely on the Court's ruling in *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015), to argue that Plaintiff only has standing to assert claims under the laws of New York.  In *Stoltz*, the Court dismissed the claims of two unidentified named plaintiffs, who respectively sought to assert claims under Georgia and Texas law.  *Id*. at *13.  Defendants argue that in reaching this ruling, the Court "addressed the issue of whether named plaintiffs . . . have Article III standing to advance claims under the laws of states in which no named-plaintiff claimed to have purchased the challenged product."  (Defs. Mem. 8.)  Defendants misunderstand the Court's holding in *Stoltz*.  In *Stoltz*, the plaintiffs did not plead a single nationwide class, but instead presented claims based on nine *separate* classes of consumers, each class asserting consumer deception claims under separate states' laws and represented by separate named plaintiffs.  *Stoltz*, 2015 WL 5579872, at *2.  The Court considered whether the two "Doe" named plaintiffs had established Article III standing as to their claims.  *Id*. at *13.  The Court explained that the complaint contained no factual allegations as to injuries or any other information concerning those two "Doe" named plaintiffs and, therefore, that neither of the "Doe" named plaintiffs had Article III standing.  *Id*.  Because no other named plaintiff alleged claims under those states' laws, the Court dismissed the claims asserted "on behalf of John Doe and Jane Doe as class representatives" for the separately pled Georgia and Texas classes.  *Id*. at *2.  In contrast, here, Plaintiff is the sole named plaintiff and seeks to represent a single nationwide class.  As such, the Court need only consider whether her allegations have satisfied the Article III standing analysis.

under the law of every other state in the nationwide class by providing "particularized

allegations" of the claims of consumers in other states.[6]  However, based on the Second Circuit's

clear pronouncement of Article III standing in *NECA-IBEW*, Plaintiff has no further burden to

demonstrate Article III standing.  Plaintiff has sufficiently stated a cognizable injury by

Defendants and has therefore established Article III standing.

### ii.   Injunctive relief

Defendants assert that Plaintiff lacks standing to seek injunctive relief because she has

failed to allege a likelihood of continuing or future injury.  (Defs. Mem. 9–11.)  Defendants argue

---

[6]  Although Defendants make no reference to class standing, their argument appears to conflate Article III standing and class standing, which governs whether a named plaintiff may assert claims on behalf of a class.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (stating that "the class standing analysis is different" from the Article III standing analysis); *see also Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277, 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016) ("Article III standing and class standing are different issues that require separate consideration; class standing is often considered at the class certification stage of the litigation." (collecting cases)); *Martinez v. Capital One Bank, N.A.*, No. 10-CV-8028, 2015 WL 4270172, at *3 (S.D.N.Y. July 13, 2015) ("[T]he Second Circuit considers the questions of Article III, statutory, and class standing as distinct." (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 481 (S.D.N.Y. 2014))); *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) ("Article III standing is distinct from the issue of 'class standing,' *i.e.*, standing to assert claims on behalf of others . . . .").  In *NECA-IBEW*, the Second Circuit held that:

> in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*NECA-IBEW*, 693 F.3d at 162 (alteration and internal quotation marks omitted) (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); and then quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)); *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (discussing *NECA-IBEW* and stating that "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant"), *cert. denied*, 136 S. Ct. 796 (2016).

that because Plaintiff pleads that she "now knows the 'truth'" about the Product, "she is not in danger of being 'deceived' again" under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and Plaintiff cannot show "any real or immediate threat that [she] will be wronged again," which is necessary for standing to assert a claim for injunctive relief.[7] (*Id*. at 9 (citing Compl. ¶¶ 14, 19, 36).)  Plaintiff asserts that she has standing to seek injunctive relief because Defendants' wrongful conduct is ongoing and continues to mislead other consumers.  (Pl. Opp'n 10–11.)  Plaintiff contends that, in the context of false and misleading product labeling, without standing to bring injunctive relief against misleading representations, a plaintiff cannot prevent future injury.  (*Id*. at 10.)

When seeking injunctive relief, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  "[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Lyons*, 461 U.S. at 101–102); *see also Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury. (first citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the

---

[7]  While the Complaint states repeatedly that "[h]ad Plaintiff and Class Members known the truth about the Product, they would not have been willing to purchase it at a price premium," it does not expressly plead allegations with respect to the intentions of Plaintiff or other Class Members to not purchase the Product in the future.  (Compl. ¶¶ 14, 19, 36.)

plaintiff must prove the likelihood of *future* or *continuing* harm.").  The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. ---, --- 133 S. Ct. 1138, 1147 (2013))).

A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore*, 506 F. App'x at 42 (stating that, while past wrongs may be "evidence bearing on whether there is a real and immediate threat of repeated injury,' such evidence 'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'" (quoting *Lyons,* 461 U.S. at 102)). "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to seek injunctive relief where the action the plaintiffs

seek to enjoin is still ongoing. [8]  *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444

(E.D.N.Y. 2015) ("The Court of Appeals for the Second Circuit has apparently not yet directly

addressed the issue of whether a plaintiff, with no claim of probable future injury, may pursue an

injunction under state consumer protection statutes.").  Nevertheless, some district courts in the

Second Circuit have concluded that consumer plaintiffs asserting deceptive advertising claims do

not have standing to seek injunctive relief because of insufficient allegations of future injury.[9]

*See Albert v. Blue Diamond Growers*, --- F. Supp. 3d ---, ---, 2015 WL 9450579, at *4–5

---

[8]  The Second Circuit recently held that a plaintiff alleging false or misleading advertising claims lacks standing to seek injunctive relief where the defendant has stopped selling the product in question.  *Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016).  Here, Plaintiff has not alleged that Defendants no longer sell the Product.

[9]  Other district courts in the Second Circuit have held otherwise and "have declined to follow *Lyons* in consumer protection cases."  *Nicosia*, 84 F. Supp. 3d at 157; *see Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged that he would not purchase the deceptive product again); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (same); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (same).  Some of these courts have determined that, because consumers cannot seek to enjoin deceptive conduct until they become aware of the conduct by suffering an injury, holding that a consumer does not have standing to seek injunctive relief would effectively bar consumers from ever being able to seek injunctions in false advertising cases.  *See Belfiore*, 94 F. Supp. 3d at 445 (holding that the plaintiffs had standing to seek injunctive relief based on their false advertising claims "because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'" (quoting *Ackerman*, 2013 WL 7044866, at *15 n.23)); *Ackerman*, 2013 WL 7044866, at *15 (noting that if standing for injunctive relief were denied because a plaintiff had become aware of an allegedly deception, then "injunctive relief would never be available in false advertising cases, a wholly unrealistic result" (citation omitted)).  These courts have also held that because the plaintiffs are still exposed to the allegedly deceptive statements, their injury is ongoing.  *See Delgado*, 2014 WL 4773991, at *14 (finding that the plaintiffs had standing to seek injunctive relief because the plaintiffs would be "expos[ed]" to the allegedly ongoing and misleading statements in the future); *Ackerman*, 2013 WL 7044866, at *15 n.23 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful.  This is the harm New York's and California's consumer protection statutes are designed to redress.").

(S.D.N.Y. Oct. 21, 2015) (holding that the plaintiffs did not have standing to seek injunctive

relief because they did not allege they would purchase the deceptive product in the future); *In re*

*Avon Anti-Aging Skincare Creams & Products Mktg. & Sales Practices Litig.*, No. 13-CV-150,

2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to

allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"),

*appeal withdrawn* (Nov. 10, 2015); *Elkind v. Revlon Consumer Products Corp.*,

No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (holding that the plaintiffs

did not have standing to seek injunctive relief because they were "aware of the alleged

misrepresentations that they challenge[d], so there [wa]s no danger that they will again be

deceived by them"); *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256

(E.D.N.Y. 2014) (holding that the plaintiffs did not have standing to seek injunctive relief

because the plaintiffs alleged that the products at issue had been deceptively advertised and that

they would not have bought the products "absent the allegedly misleading advertisements").

These courts have held that because the plaintiffs were aware of the deceptive advertising and

were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm.  *See*

*Albert*, --- F. Supp. 3d at ---, 2015 WL 9450579, at *4 ("Plaintiffs have not alleged that they will

purchase [the deceptive products] in the future. . . .  Since Plaintiffs have not alleged any future

injury, they do not have standing to seek injunctive relief on behalf of themselves or a class.");

*Avon*, 2015 WL 5730022, at *8 (explaining that because "[e]ach [p]laintiff states that, if she had

been aware of the alleged truth about Avon's products, she would not have bought class

products," the plaintiffs therefore failed to allege a risk of future harm and "lack[ed] standing to

seek a forward-looking injunction"); *Elkind*, 2015 WL 2344134, at *3 ("[The] [p]laintiffs are

now aware of the alleged misrepresentations . . . , so there is no danger that they will again be deceived by them.").[10]

Despite the absence of Supreme Court or Second Circuit law applying this standard to consumer plaintiffs seeking injunctive relief, the requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy.  *See Lyons*, 461 U.S. at 102 (stating that in order to "satisfy the threshold requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a likelihood of future injury); *Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (noting that "Article III limits federal judicial power" and that plaintiffs "lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury" (first quoting *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Shain*, 356 F.3d at 215 (noting that "[i]n order to meet the constitutional minimum of standing to seek injunctive relief," a plaintiff must "show a likelihood that he will be injured in the future" (alteration and internal quotation marks omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998))); *Albert*, --- F. Supp. 3d at ---, 2015 WL 9450579, at *5 (declining to follow *Ackerman* because "binding Supreme Court and Second Circuit precedent" requires that in order "[f]or a plaintiff to have individual standing to seek injunctive relief, he or she must demonstrate

---

[10]  Where the named plaintiffs do not have standing to seek an injunction, the putative class also lacks standing to seek injunctive relief.  *Albert v. Blue Diamond Growers*, ---F. Supp. 3d ---, ---, 2015 WL 9450579, at *4 (S.D.N.Y. Oct. 21, 2015) (noting that "the named plaintiffs must have standing in order to seek injunctive relief on behalf of the class" (citing *Dodge v. Cty. of Orange*, 103 F. App'x. 688, 690 (2d Cir. 2004))); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015) (holding that the named plaintiff lacked standing to pursue injunctive relief on behalf of a putative class because the named plaintiff "must personally have standing to secure prospective relief on behalf of a class" and the named plaintiff lacked personal standing (collecting cases)), *aff'd in relevant part, vacated on other grounds*, ---F. 3d ---, 2016 WL 4473225 (2d Cir. Aug. 25, 2016).

14

a likelihood of future injury" (first citing *Lyons*, 461 U.S. at 102; and then citing *Shain*, 356 F.3d at 215)).

Here, Plaintiff alleges that she was injured in the past when she "read and relied on Defendants' representations about the benefits of consuming the Product, and purchased it at a premium price," but that, had she "known the truth about the Product, [she] would not have been willing to purchase it at a price premium." (Compl. ¶¶ 14, 19.)  Plaintiff alleges that Defendants' misleading conduct continues, (*id*. ¶¶ 62, 100, 110), but have not alleged that she will purchase the Product in the future.  Plaintiff cannot rely on past injury, and these allegations are insufficient to establish a likelihood of future injury.  *See Tomasino*, 44 F. Supp. 3d at 256 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).  Moreover, in order to be injured by an allegedly deceptive misrepresentation, Plaintiff must actually be personally deceived by the misrepresentation.  *See LaCourte v. JP Morgan Chase & Co.*, No. 12-CV-9453, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) (noting that "numerous courts have held that in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived" (first citing *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (App. Div. 2004); and then citing *Mascoll v. Strumpf*, No. 05-CV-667, 2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006))).  Because Plaintiff has failed to allege a risk of future injury, she lacks standing to seek injunctive relief individually and on behalf of a class.  Accordingly, the Court dismisses Plaintiff's claims seeking injunctive relief.

### c.   New York General Business Law claims

Defendants move to dismiss Plaintiff's New York statutory consumer protection claims,

asserted under GBL sections 349 and 350, arguing that Plaintiff has failed to sufficiently allege that any statements are false or misleading.  (Defs. Mem. 11–22.)

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349. GBL section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350.  To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)); *see Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under section 349).

To establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation.  *See Orlander*, 802 F.3d at 300 ("[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (internal quotation marks omitted) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007))); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (stating that a plaintiff must show that the act complained of was likely to "mislead a reasonable consumer acting reasonably under the circumstances"). "Omissions, as well as acts, may form the basis of a deceptive practices claim."  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 525 (2d Cir. 2005); *see Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("Whether a representation or an omission, the deceptive practice must be

likely to mislead a reasonable consumer acting reasonably under the circumstances.").

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.  The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first citing *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014); and then citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label." (alteration in original) (citation and internal quotation marks omitted)); *Ackerman v. Coca–Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole").

"[U]sually [the reasonable consumer] determination is a question of fact." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014))); *see Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact." (citing *Sims v. First Consumers Nat'l Bank*, 758 N.Y.S.2d 284 (App. Div. 2003)); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 217 (App. Div. 2010) (noting that consumer reasonableness was a question of fact).

17

Defendants argue that none of the statements on the Product's labeling or in its advertising would deceive a reasonable consumer because: (1) the representations about the health benefits of the Product — including that it "Helps Alleviate Hot Flashes, Night Sweats and Mild Mood Changes" — are not false, as alleged by Plaintiff, (2) the trace lead content of the Product does not reasonably render false the statement that the Product contains "only the finest quality herbs and spices," (3) no reasonable consumer could interpret Defendants' use of the word "natural" to mean that the Product contains no synthetic ingredients, and (4) Defendants have not represented, as alleged, that the Product meets USP specifications for black cohosh.  (*Id*.)  The Court discusses each of Defendants' four arguments.

### i.    Alleviation of menopause symptoms

Defendants argue that Plaintiff has failed to adequately allege that statements regarding the benefits of consuming the Product are false because the scientific studies cited by Plaintiff do not support her assertion that black cohosh cannot alleviate menopause symptoms.  (Defs. Mem. 12–18.)  The two relevant statements on the Product's labeling and in its advertising are: that the Product "Helps Alleviate Hot Flashes, Night Sweats and Mild Mood Changes" and that "Studies document Black Cohosh's ability to help support the physical changes that occur in a woman's body over time."  (*See* Compl. ¶¶ 6, 70, 89.)  Defendants contend that, because Plaintiff identifies scientific studies "as the factual predicate for her conclusory allegation" that these health claims are false, the Court must dismiss the claim unless the identified studies *disprove* black cohosh's ability to alleviate menopause symptoms.[11]  (Defs. Mem. 13–15.)  Defendants

---

[11]  Defendants argue that Plaintiff cannot merely allege that these representations are unsubstantiated by scientific support because claims for "lack of substantiation" are not viable in New York.  (Defs. Mem. 14.)  Plaintiff has neither alleged nor argued that Defendants' claims about black cohosh's health effects are "not substantiated" by science, but rather that these

argue that the "express language" of the studies "clearly does not establish" that Defendants' claims about black cohosh have "actually been disproven." (*Id*. at 15.) Rather, the studies "simply reflect the existence of scientific debate" and "the existence of science that supports differing positions as to the effectiveness of black cohosh in the relief of menopausal symptoms" and, therefore, Plaintiff's claim that these health representations are false must fail. (*Id*. at 15–18.)

Plaintiff argues that she has sufficiently stated that Defendants' representations of the Product's benefits are false and that she has "buttress[ed] those allegations with sound scientific studies." (Pl. Opp'n 13.) Plaintiff further argues that at the pleadings stage she is not required to "affirmatively disprove [D]efendants' product claims," including that the representations regarding black cohosh's health benefits are false. (*Id*. at 11.)

"[T]he claim that the products cannot work is a valid theory of affirmatively misleading advertising." *Tomasino*, 44 F. Supp. 3d at 258 (first citing *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 460 (E.D.N.Y. 2013); and then citing *Quinn*, 958 F. Supp. 2d at 544). Faced with such claims, some courts in this Circuit have required that plaintiffs only "sufficiently point to the specific statements that form the basis of their claims," and "state why defendant's statement is allegedly false and deceptive." *Quinn*, 958 F. Supp. 2d at 543 (internal quotation marks omitted)

---

claims are "affirmatively untrue." *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 259 n.4 (E.D.N.Y. 2014) (distinguishing between claim of affirmative falsehood and claim of lack of substantiation); *see also Bitton v. Gencor Nutrientes, Inc.*, No. 14-CV-56381, 2016 WL 3545346, at *2 (9th Cir. June 28, 2016) (finding that allegations regarding a representation that a scientific trial "produced statistically significant results" was not a lack of substantiation claim but a claim asserting falsity, and that such allegations "are sufficient to state a claim for violation" of both California and New York consumer statutes); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (distinguishing between claim of affirmative falsehood and claim of lack of substantiation). Because the Court finds that Plaintiff is not asserting a lack of substantiation claim, the Court does not determine whether such a claim is barred under New York law.

(citing *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 527 (S.D.N.Y. 2003)); *see also*

*Tomasino*, 44 F. Supp. 3d at 258 (dismissing New York statutory claims because the plaintiff

"fail[ed] to allege what the specific ingredients in each product are," failed to allege that those

ingredients could not improve skin appearance, as promised, and "point[ed] to nothing, in the

form of scientific evidence or otherwise, that could discredit" the defendants' representations

about the product's skincare benefits).  However, one district court in this Circuit, which

considered allegations that specific scientific studies "disprove[d] a product's claims," held that

"a stark disconnect between the scientific studies and the claims made about [the product's]

benefits is fatal to [the] plaintiffs' complaint." *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138

(E.D.N.Y. 2015); *see also Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727, 2012 WL 5382218,

at *7 (S.D. Cal. Nov. 1, 2012) (dismissing claims where plaintiff argued that studies "len[t]

'facial plausibility'" to allegations of false health representations, but the court found the

manufacturer had not made *any* representations regarding the symptoms that the studies

concluded the supplement did not alleviate)).

Nevertheless, courts agree that "issues of fact, credibility, and the weight of the evidence

are not properly considered on a motion to dismiss." *Kardovich*, 97 F. Supp. 3d at 140 (citing

*Hughes*, 930 F. Supp. 2d at 461); *see Hughes*, 930 F.Supp.2d at 461–62 ("[I]ssues concerning the

weight that should be given to this study cannot be resolved on a motion to dismiss . . . .");

*Quinn*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Whether or not the studies support

plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the

Court cannot resolve on a motion to dismiss."); *see also Vasic v. Patent Health, LLC.*,

No. 13-CV-849, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (holding that plaintiff's

claims were facially plausible because of the scientific studies cited in support, and finding that

"the issue of whether the proffered studies do in fact show that Defendants' representations are provably false is a question not properly decided on a motion to dismiss"); *Pearson v. Target Corp.*, No. 11-CV-7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("[W]hether or not the proffered studies are applicable to Up & Up Triple Strength is a question of fact that I do not decide at this stage.").

Here, Plaintiff alleges that the Product "cannot provide any of the represented benefits," (Compl. ¶ 74), and thus Defendants have falsely and deceptively represented to consumers that the Product alleviates hot flashes, night sweats and mood changes, (*id*. ¶ 70). Plaintiff repeatedly alleges that "there are no scientifically sound, reliable studies demonstrating that black cohosh can provide any of these benefits," and that "all the reliable studies of black cohosh have demonstrated that it does *not* help to alleviate hot flashes, night sweats, mild mood changes, or any other symptoms of menopause." (*Id*. ¶¶ 7, 9, 74, 93, 104.) Plaintiff identifies and summarizes: (1) a 2006 Annals of Internal Medicine report; (2) two studies published in 2008 and 2009 in Menopause: The Journal of the North American Menopause Society; (3) a 2009 report from The Journal of Clinical Oncology; and, (4) a "meta-analysis" of black cohosh research, published in 2012 in The Cochrane Review, all of which she alleges support the conclusion that black cohosh is no more effective in alleviating menopause symptoms than a placebo. (*See id*. ¶ 7.) According to Plaintiff, studies that have "claimed to show benefits from black cohosh consumption were unreliable" due to issues such as the lack of a placebo control, small sample size, bias and tested formulations of black cohosh other than those offered in the Product. (*Id*. ¶¶ 8, 10, 11, 12, 75.)

Plaintiff's allegations are sufficient to state that Defendants' representations are materially misleading because she has identified "specific statements" used by Defendants that

assert that the Product will alleviate menopause symptoms, and Plaintiff has explained in detail her allegation that the scientific evidence shows that this representation is false. *See Quinn*, 958 F. Supp. 2d at 543 (holding that the plaintiffs sufficiently alleged that a health supplement's representation that it "help[ed] rebuild cartilage" was false or deceptive because the plaintiff alleged that it was "medically impossible to rebuild cartilage" with such a supplement). Factual disputes about whether the studies actually prove that black cohosh is ineffective, or whether there is mere scientific debate regarding the benefits of black cohosh, cannot be resolved by the Court on a motion to dismiss. *See id.* (finding to be sufficient that the plaintiff cited to "numerous scientific studies that arguably support their conclusion" that a product could not provide its promised benefits); *In re Gerber Probiotic Sales Practices Litig.*, No. 12-CV-835, 2013 WL 4517994, at *8 (D.N.J. Aug. 23, 2013) ("The parties dispute the reliability and findings of certain studies . . . . [T]he Court agrees . . . that it is not appropriate to consider the content of the studies and resolve the factual issues at this stage of the litigation.").

Defendants' argument that Plaintiff omits that the studies "expressly acknowledge the existence of scientific studies that substantiate" Defendants' statements about the effectiveness of black cohosh does not undermine the fact that Plaintiff has stated a claim. (Defs. Mem. 15.) Defendants argue that, as in *Kardovich*, there is a "stark disconnect" between the studies and Plaintiff's allegations, (*id.* at 13), but the Court finds *Kardovich* distinguishable. In *Kardovich*, the district court found that the scientific studies pled as the basis for the claims included *no* findings relevant to the representations that were allegedly false. *Kardovich*, 97 F. Supp. 3d at 138. Moreover, the *Kardovich* court expressly stated that it was able to reach that conclusion without considering "issues of fact, credibility, and the weight of the evidence" because the plaintiffs' allegations were so conclusory and contradicted by the attached studies as to render

the allegations implausible.  *Id*. at 140.

Here, Defendants do not contend that the studies cited by Plaintiff contain findings irrelevant to the efficacy of black cohosh, but rather that these studies admit the existence of research supportive of black cohosh's purported health benefits.  Plaintiff alleges that "[e]very reliable, scientifically sound study on black cohosh has demonstrated that it is no better than a placebo" and argues that research to the contrary is provably unreliable and, therefore, that Defendants' representations are false.  (Compl. ¶¶ 7– 11, 74, 93, 104; Pl. Opp'n 13.)  Thus, the studies cited by Plaintiff in the Complaint do not "contradict" the allegations that the claims regarding the benefits of the Product are false, as the *Kardovich* court found of the studies before it, but rather merely identify the parties' factual disagreement about the reliability of competing research on black cohosh's benefits.  *See Kardovich*, 97 F. Supp. 3d at 138 ("Simply put, these studies concerning specific medical conditions in no way correlate to, let alone contradict as plaintiffs allege, the unrelated claims made" by the defendant about the health benefits of its vitamins); *see also Gallagher v. Bayer AG*, No. 14-CV-4601, 2015 WL 4932292, at *6 (N.D. Cal. Aug. 18, 2015) (declining to dismiss California and New York statutory consumer claims based on scientific studies and distinguishing *Kardovich* because it "relied on the extreme 'mismatch' between the plaintiff's claims and the studies cited in support").  The Court finds that Plaintiff's allegations that the Product cannot provide the health benefits represented by Defendants, and that scientific studies support that the Product does not provide the represented health benefits, are sufficient to plead the "materially misleading" element of her claims under GBL sections 349 and 350.

### ii.   Lead content

Defendants argue that the representation "Nature's Bounty's Guarantee: We use only the

finest quality herbs and spices" could not, as a matter of law, mislead a reasonable consumer because Plaintiff's allegations that the Product is in fact "contaminated with lead" are "demonstrably false" and "nonsensical."[12]  (Defs. Mem. 18 (citing Compl. ¶¶ 15–19.))  Defendants further argue that Plaintiff's allegation that the Product contains an "unsafe" level of lead conflates the trace amount of lead allegedly contained in the Product's capsules with *blood* levels of lead, and disregards that the Federal Drug Administration ("FDA") allows for a safe level of daily exposure to lead for adult women.  (*Id*. at 18–19.)

Plaintiff argues that Defendants' focus on "whether the [P]roduct's lead contamination poses a health risk" is misplaced because "any information about lead in the [P]roduct is an actionable omission," and the assertion that the Product contains "only" the finest quality herbs and spices could mislead a reasonable consumer about the Product's lead content, even if minimal.  (Pl. Opp'n 18.)

The Second Circuit has recognized that, "in determining whether a reasonable consumer

---

[12]  In passing, Defendants also argue that this statement is non-actionable "puffery." (Defs. Mem. 18.)  "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language."  *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (citing *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 202 (N.D.N.Y. 2016)); *Elkind v. Revlon Consumer Products Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *13 (E.D.N.Y. May 14, 2015) ("[V]ague statements of a product's superiority are nonactionable puffery.").  "Puffery is not actionable under [§] 349." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (citation omitted); *see also In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013) ("[The] plaintiffs' Section 349 and 350 claims based on nonactionable puffery are dismissed as to all defendants."); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012) ("If an alleged misrepresentation would not deceive a reasonable person because it is vague or amounts to mere puffery or opinion, then a claim under the consumer protection statutes *may* be dismissed, as a matter of law, on a motion to dismiss.").  While Defendants' use of the word "finest" may qualify as puffery, Plaintiff's allegations do not focus or hinge on the use of this word.  Instead, Plaintiff argues that Defendants' use of the word "only" could lead a consumer to believe that the Product contains solely herbs and spices, when it in fact also contains lead.

24

would have been misled by a particular advertisement, context is crucial," and, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742.  However, "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [the defendant]'s labeling and marketing." *Ackerman*, 2010 WL 2925955, at *16. In *Ackerman,* the court denied a motion to dismiss misrepresentation claims, including claims under New York consumer protection laws, where the plaintiffs alleged that the labeling and marketing of the beverage "vitaminwater" was misleading because it "bombard[s] consumers with a message of purported benefits, and draw[s] consumer attention away from the significant amount of sugar in the product" and "suggests that vitaminwater contains nothing but vitamins and water." *Id.* at *1–2, 5–6.  The defendants in *Ackerman* argued that no reasonable consumer could have been misled because the Nutrition Facts included on each bottle of vitaminwater provided accurate sugar-content information.  *Id.* at *16.  In rejecting this argument, the court concluded that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product [did] not eliminate the possibility that reasonable consumers may be misled" into believing that vitaminwater consisted solely of vitamins and water.  *Id.* (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.")); *see Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *17 (E.D.N.Y. Sept. 22, 2015) (denying motion to dismiss, including claims under New York law, because a reasonable consumer could be misled by a yogurt labeled "Total 0%" into believing that the product contained, for example, no

25

calories despite the fact that a nutrition facts label indicated otherwise).

Similar to *Ackerman*, Defendants' purported compliance with FDA rules regarding lead does "not eliminate the possibility that reasonable consumers may be misled" into believing that the Product contained "only" herbs and spices, and therefore did not contain any lead.  Thus, Defendants' focus on whether the Product complies with federal requirements for lead content, and Plaintiff's repeated allegations that the Product contains "unsafe" levels of lead, are not determinative of the issue.  Rather, the question is whether a consumer could reasonably conclude that the Product contains *only* herbs and spices and therefore no lead.  While the connection between this language and a conclusion about lead appears somewhat tenuous, the fact that the Product may in fact contain "fine herbs and spices" does not preclude a consumer from interpreting the use of the word "only" either to mean that the herbs and spices are the sole ingredients in the Product, or that fine herbs and spices would not contain traces of lead.  *See Ackerman*, 2010 WL 2925955, at *16 (finding that "vitaminwater" could mislead consumers into believing that the drink contained only vitamins and water, even though the drink did in fact contain vitamins and water).  Although a consumer reading the nutrition label may note that the Product contains other ingredients besides black cohosh, a consumer could nevertheless reasonably conclude that the Product does not contain lead, as the lead content — even if minimal — is not disclosed to consumers.  Therefore, the Court finds that these allegations are sufficient to plead the "materially misleading" element of Plaintiff's GBL section 349 and 350 claims.

### iii.   "Natural" whole herbs and "natural" menopausal relief

Defendants argue that the statements that the Product is "Natural Whole Herb" and provides "Natural Menopausal Relief" are not misleading or deceptive because an objectively

reasonable consumer would not assume that these representations indicate that "every other ingredient used in the Product's manufacturing process is 'natural.'" (Defs. Mem. 19–20 ("[I]t is obvious to an objectively reasonable consumer that a bottle of black cohosh, containing 100 *capsules*, contains something other than the whole herbal root itself . . . .").) Defendants further argue that Plaintiff alleges that she read the "entire label," which "expressly states" that the Product contains other ingredients, including the magnesium stearate that Plaintiff identifies as synthetic, and that no reasonable consumer could believe that a supplement "contained in a capsule . . . was made from nothing other than black cohosh." (*Id*. at 20–21.)

Plaintiff argues that a reasonable consumer could be misled by the "natural" language into believing that the Product contains only natural ingredients, such as the black cohosh herb, rather than synthetic ingredients such as magnesium stearate, and that the reasonableness of such a conclusion is a factual dispute. (Pl. Opp'n 19–21.) Plaintiff also argues that the disclosure of ingredients other than the black cohosh does not "insulate" Defendants from liability for misleading consumers that the Product contains only natural ingredients. (*Id*. at 20.)

The mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations in a label or advertisement. *See Goldemberg*, 8 F. Supp. 3d at 478–481 (holding that, where defendant's trademark and advertising "exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the products' back label did not, as a matter of law, preclude a reasonable consumer from being misled); *Hughes*, 930 F. Supp. 2d at 463–65 (denying dismissal of claims against vitamin manufacturer and its corporate parent based on allegedly misleading statements that plaintiffs claimed created expectation that products were an immune system defense because, "[a]t this early stage of the litigation, it cannot be determined whether a

disclaimer on the back of . . . [the] products, stating that it is 'not intended to diagnose, treat, or prevent any disease,' eliminates the possibility of a reasonable consumer being misled into thinking . . . [the allegedly misleading statements] signified a cold or flu prevention product"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *23–24 (E.D.N.Y. Aug. 29, 2013) (concluding that even though an explanatory ring of text stating "no MSG — no preservatives — no artificial flavors" surrounded the words "all natural," the court could not properly resolve on a motion to dismiss what a reasonable consumer would believe that the phrase "all natural" means with respect to the presence of genetically modified organisms); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Rather, the significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer, as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement. *See Koenig*, 995 F.Supp.2d at 287–88 (holding that disclosure did not, as a matter of law, cure alleged misrepresentation because "a reasonable consumer might . . . focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"); *Delgado*, 2014 WL 4773991, at *9 (holding that disclosures were "not conspicuous or prominent enough to necessarily cure" alleged misrepresentation and declining to grant dismissal on basis of reasonable consumer prong); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div. 2008) (denying motion to dismiss a section 349 claim based on "the inadequate font size in which the [gift card's]

28

dormancy fee provision was printed").

Here, the front of the Product's bottle indicates in prominent lettering that the Product contains "Natural Whole Herb" and that it offers "Natural Menopausal Relief."  Although Defendants are correct that these representations do not promise that the Product is "all" or "100%" natural, a reasonable consumer could assume that the Product contains only natural ingredients.  In particular, the breadth of the representation that the "relief" offered is "natural" could lead a consumer to reasonably conclude that all ingredients are natural.  *See, e.g.*, *Goldemberg*, 8 F. Supp. 3d at 479–80 (finding that cosmetics that contained the phrase "Active Naturals" on their label could mislead consumers into believing that the cosmetics contained only natural ingredients, even though the cosmetics did in fact contain active, natural ingredients).  The fact that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not "natural" does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong.  The Court finds that these allegations are sufficient to plead the "materially misleading" element of Plaintiff's claims under GBL sections 349 and 350.

### iv.   USP certification

Plaintiff alleges that representations on Defendants' website that the USP has audited Defendants' facilities are misleading because a reasonable consumer could conclude that the Product itself also complies with USP specifications for black cohosh.  (Compl. ¶¶ 37–40, 78, 94, 106.)  Plaintiff argues that these allegations constitute a "cognizable misrepresentation" and reiterate that it is inappropriate to weigh evidence at the pleading phase.  (Pl. Opp'n 18.)  Defendants argue that the statement on Defendants' website that their facilities have been audited by the USP is not misleading because it is true, and that an objectively reasonable

consumer could not interpret this statement to represent that the Product itself also conforms to the specifications of the USP because Defendants do not make that representation on the website.[13]  (Defs. Mem 21–22.)

Whether a reasonable consumer could infer from Defendants' statement of compliance with a USP inspection that the Product also complies with USP specifications, despite the accuracy of Defendants' website, is a question of fact that cannot be resolved on a motion to dismiss.  *See, e.g.*, *Hidalgo*, 148 F. Supp. 3d at 298 (denying a motion to dismiss a section 349 claim and explaining that it was a question of fact whether a reasonable consumer could have been misled by representations on two products' labels that they were "clinically proven" to help infants sleep better, where those statements accurately reflected that the products' efficacy had only been tested in a specific three-product routine).  Defendants provide no legal support for their argument that an accurate statement cannot mislead a consumer.  The Court finds that these allegations are sufficient to plead the "materially misleading" element of Plaintiff's GBL section 349 and 350 claims.

In sum, Plaintiff has sufficiently pled that the Product's labeling contains false or misleading statements by alleging that a reasonable consumer may be misled by: (1) the representations about the health benefits of the Product, (2) the statement that the Product contains "only the finest quality herbs and spices," (3) the use of the word "natural", and (4) the representation of compliance with a USP inspection.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claims under GBL sections 349 and 350.

---

[13]  Defendants further argue that these statements are not actionable under the Federal Drug and Cosmetics Act, but do not explain the relevance of the Federal Drug and Cosmetics Act to Plaintiff's allegations under New York's statutory consumer protection laws.  (Defs. Mem 21–22.)

### d.   Fraud claim

Defendants argue that Plaintiff's common law fraud claim fails because Plaintiff has "failed to show any misstatement or omission of fact at all, much less a material one," and has thus failed to plead the elements of fraud.  (Defs. Mem. 22.)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *see Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (stating the elements of fraud under New York law).  For common law claims premised on fraud, pleadings are "subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Putnam Advisory Co*, 783 F.3d at 402–03 (internal quotation marks omitted) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).  "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  *United States ex rel. Ladas v. Exelis, Inc.*, --- F.3d ---, ---, 2016 WL 3003674, at *7 (2d Cir. May 25, 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)).  "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

"Ultimately, whether a complaint satisfies Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013); *see Kane ex rel, U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383 (S.D.N.Y. 2015) (quoting same); *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014) (quoting same); *U.S. ex rel. Kester v. Novartis Pharma. Corp.*, 23 F. Supp. 3d 242, 258 (S.D.N.Y. 2014) (quoting same); *see also Rombach v. Chang*, 355 F.3d 164, 171 (discussing the purpose of the particularity requirement and emphasizing fair notice to the defendant).

Defendants essentially argue, without any legal support, that Plaintiff's fraud claim fails because her claims under GBL sections 349 and 350 fail.  (Defs. Mem. 22.)  Because the Court finds that Plaintiff has sufficiently pled that the Product's labeling and advertising contains false or misleading statements, this argument fails.  *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *33 (S.D.N.Y. Nov. 12, 2015) (holding that the plaintiffs "sufficiently alleged the who, what, when, where, and why of the fraud at issue under Rule 9(b)" because the plaintiffs identified the "*specific ads* that made *specific promises*" regarding the products at issue); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015) (finding that the plaintiff satisfied Rule 9(b) because the plaintiff alleged that the defendants "made personal guarantees in national media advertisements," that the plaintiff "heard [the] [d]efendants' media advertisements" and that the plaintiff "relied on these representations"); *In re Frito-Lay*, 2013 WL 4647512, at *23–24 (holding that the plaintiffs met the Rule 9(b) heightened pleading requirement because the plaintiffs "allege[d] that defendants

PepsiCo and Frito–Lay (the 'who') falsely stated that the products are 'All Natural,' but in fact, are not . . . (the 'what').  When the defendants labeled, and the plaintiffs purchased, the products between January 1, 2010 and the present (the 'when'), the plaintiffs relied on this representation, which was placed prominently on the products' packaging (the 'where')").  Defendants make no specific arguments as to the deficiency of Plaintiff's fraud pleading, beyond listing the elements of the claim and stating in a conclusory manner that Plaintiff has failed to plead sufficient detail. The Court denies Defendants' motion to dismiss Plaintiff's fraud claim for failure to comply with Rule 9(b).

> ### e.   Breach of express warranty

Defendants argue that Plaintiff's claim for breach of express warranty under New York law must be dismissed because Plaintiff has failed to allege that she was in privity with Defendants.  (Defs. Mem. 22–23.)  Plaintiff argues that she has sufficiently alleged each element of this claim, and that privity is not required to state a claim for breach of express warranty.  (Pl. Opp'n 21–23.)

"Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. Law § 2-313(1)(b).  Under New York law, "[t]o prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'"  *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111–12 (2d Cir. 2010) (citation omitted)); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 639 (2d Cir. 2010) (stating that "an express warranty is created by '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and

becomes part of the basis of the bargain,' [or] by '[a]ny description of the goods which is made part of the basis of the bargain'" and explaining that a seller need not use words such as "warrant" or "guarantee" to create an express warranty (citation omitted)); *Koenig*, 995 F. Supp. 2d at 289 ("To state a claim for breach of express warranty [under New York law], a plaintiff must allege that 'there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment.'" (quoting *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012))); *Goldemberg*, 8 F. Supp. 3d at 482 ("To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." (citing *Avola v. La.–Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013))).

"Generalized statements by a defendant, however, do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015) (quoting *Hubbard v. Gen. Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996)); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (same); *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *6 (same). "What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss." *Paulino*, 2015 WL 4895234, at *2 (citing *Ault*, 2014 WL 1998235, at *6); *Silva*, 2015 WL 5360022, at *10 (same).

Defendants do not argue that Plaintiff has failed to plead an affirmation by Defendants, or otherwise failed to allege the elements of a claim for breach of express warranty.  Rather, Defendants argue that privity is required to state a claim for breach of express warranty.  (Defs. Mem 22–23; Defs. Reply 14.)  Defendants identify some district courts that have dismissed claims for breach of express warranty on the pleadings for failing to allege privity between the parties.  *See Koenig*, 995 F. Supp. 2d at 290 ("Under New York law, privity is normally an essential element of a cause of action for express warranty."); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (dismissing an express warranty claim based on allegations that an oil manufacturer breached a warranty that its product was "100% Pure Olive Oil" because the plaintiffs failed to adequately plead privity).  However, other courts have held that privity is not required to state a claim for breach of an express warranty under New York law.  *See Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *6–7 (S.D.N.Y. July 20, 2016); *Freidman v. Gen. Motors Corp.*, No. 08-CV-2458, 2009 WL 454252, at *2 (S.D.N.Y. Feb. 23, 2009) ("[W]arranties are not always part of a formal contract and thus in New York, the requirement of privity between buyer and seller has been substantially relaxed for claims of breach of express warranty.").

As explained by the court in *Mahoney*, the New York Court of Appeals has "dispensed with the requirement of privity in cases involving breach of an express warranty where only economic damages are alleged."  *Mahoney*, 2016 WL 3951185, at *6 (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16 (1962)); *see also Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 739 (App. Div. 2008) (distinguishing between the requirement of privity in asserting a claim for breach of an implied warranty, and the absence of such a requirement in asserting a claim for breach of an express warranty).  The court in *Mahoney* further explained

35

that, despite pre-dating the effective date of the UCC and the amendment of New York law, the comments "on relevant UCC sections . . . indicates that *Randy Knitwear* remains controlling precedent" and "explains that 'the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.'" *Mahoney*, 2016 WL 3951185, at *6 (quoting N.Y. U.C.C. § 2-313, cmt.2 (discussing express warranties)).

New York state courts and courts in this Circuit have also specifically held that New York law does not require privity for an express warranty claim where a plaintiff challenges advertising or sales literature. *See Weisblum*, 88 F. Supp. 3d at 295–96 ("[C]ourts have held that a plaintiff need not be in privity with a defendant to bring such a claim based on misrepresentations contained in public advertising or sales literature." (collecting cases)); *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (App. Div. 2008) ("[A]n express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies . . . . ." (citing *Randy Knitwear*, 226 N.Y.S.2d at 363)); *see also Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (denying a motion to dismiss express warranty claims based on allegations that a diet pill's representations including "Rapid Weight Loss" were false because "a plaintiff need not be in privity with a defendant to bring . . . a claim based on misrepresentations contained in 'public advertising or sales literature'" (citation omitted)); *Silva*, 2015 WL 5360022, at *11 (denying a motion to dismiss an express warranty claim for lack of privity and finding that the relevant "website copy constitutes 'public advertising and sales literature'"); *Prue v. Fiber Composites, LLC*, No. 11-CV-3304, 2012 WL 1314114, at *9 (E.D.N.Y. Apr. 17, 2012) (same); *Goldemberg*, 8 F. Supp. 3d at 482 ("A buyer may bring a claim against a manufacturer from

whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements . . . . " (citations and internal quotation marks omitted)).

Because the Court is not persuaded that Plaintiff must plead privity with Defendants and because Plaintiff's claims are based on allegations related to Defendants' assertions in sales materials and advertisements, the Court denies Defendants' motion to dismiss Plaintiff's express warranty claim.

**f. Magnuson Moss Warranty Act claim**

Defendants argue that Plaintiff's MMWA claim should be dismissed because the statements identified by Plaintiff are "product descriptions that do not constitute warranties." (Defs. Mem. 24.) Plaintiff argues that her MMWA claim should not be dismissed because she has adequately pled a breach of express warranty claim under New York law, and the MMWA merely incorporates state-law breach of warranty claims. (Pl. Opp'n 23.)

The MMWA grants relief to "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)); *see Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015) (same). A "written warranty" is defined as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). The MMWA "makes a warrantor directly liable to a consumer for breach of a written warranty." *Diaz v. Paragon Motors of Woodside, Inc.*, 424

F. Supp. 2d 519, 540 (E.D.N.Y.2006) (citing *Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d

214, 216 (App. Div. 2003)); *see also Brady*, 101 F. Supp. 3d at 234 (same).

The MMWA "merely incorporates and federalizes state-law breach of warranty claims,

including state-law standards for liability and damages." *Ebin*, 2013 WL 3936193, at *3 n.2; *see*

*Kaatz v. Hyland's Inc.*, No. 16-CV-237, 2016 WL 3676697, at *4 n.5 (S.D.N.Y. July 6, 2016)

("Although the MMWA is a federal statute, liability under it is based on state warranty laws.");

*Diaz*, 424 F.Supp.2d at 540 (explaining that the MMWA is not a source of liability, "but allows a

consumer to recover damages under existing state law" (citing *Walsh v. Ford Motor Co.*, 807

F.2d 1000, 1012 (D.C. Cir. 1986)); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238,

249 (2d Cir.1986) (holding that state law governs whether lack of privity is a defense to an

MMWA claim). Therefore, "plaintiffs' breach of express warranty and MMWA claims stand or

fall together." *Brady*, 101 F. Supp. 3d at 234.

Defendants contend that Plaintiff's allegations do not "identif[y] a defect, or a failure to

meet a specified level of performance over a specified period of time." (Defs. Mem. 24.) They

argue that Plaintiff's MMWA claims should fail for the same reasons as her GBL claims because

Plaintiff's allegations regarding the Product's labeling and the statements on Defendants'

website are either "directly contradicted by specific facts in the scientific studies she relies on,"

are "demonstrably false," or, in the case of the use of the word "natural," are merely product

descriptions. (*Id.*) Defendants do not contest that Plaintiff's MMWA claim is based on the New

York warranty law, but cite only to cases by district courts in California in support of their

arguments that the statements identified by Plaintiff as warranties are merely "product

descriptions." (*Id.*)

As discussed above with regard to Plaintiff's consumer protection claims, because the Court cannot conclude that the Product could not mislead a reasonable consumer, the Court cannot conclude as a matter of law that Defendants' representations about the Product would not amount to a warranty that could induce a consumer to purchase the Product, and which is therefore actionable as an express warranty under either New York law or the MMWA.  *See Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016) (finding that because the plaintiff had stated a New York consumer protection claim that the defendant's vodka bottle labels could mislead a reasonable consumer, the plaintiff had plausibly stated a claim for breach of express warranties for the same reasons); *Goldemberg*, 8 F. Supp. 3d at 483 ("[A]s the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the [express] warranty claim."); *see also Brady*, 101 F. Supp. 3d at 235 (denying a motion to dismiss MMWA because the complaint pled a New York breach of express warranty claim).  Defendants' motion to dismiss Plaintiff's MMWA claim is denied.

### g.   Unjust enrichment

Defendants argue that Plaintiff's unjust enrichment claim under New York law must be dismissed because an unjust enrichment claim is only viable where no adequate legal remedy exists and Plaintiff's New York legal claims provide Plaintiff with an adequate legal remedy. (Defs. Mem. 24–25.)  Plaintiff argues that she may plead an unjust enrichment claim in the alternative and that discovery is needed before deciding whether this claim is duplicative.  (Pl. Opp'n 24.)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). An unjust enrichment claim may be premised on deceptive conduct. *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004) ("[P]laintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment."). However, "unjust enrichment is not a catchall cause of action to be used when others fail . . . [and] [a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Unjust enrichment is available:

> only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.

*Id.* (dismissing unjust enrichment claim where it was based on same allegations as inverse takings claim grounded in trespass).

Plaintiff has alleged violations of GBL sections 349 and 350 as well as a claims for breach of express warranty under New York law. (Compl. ¶¶ 65–113.) Plaintiff's unjust enrichment claim is based on the same allegations as those set forth in support of her other New York claims. (*Id.* ¶¶ 168–174.) Because Plaintiff's unjust enrichment claims under New York law are based on the same allegations as her claims of violations of GBL sections 349 and 350 and breach of express warranty under New York law, and because Plaintiff has not shown how her unjust enrichment claim differs from her other New York claims, Plaintiff's unjust enrichment claim under New York law is duplicative of her other New York claims. *See Weisblum*, 88 F. Supp. 3d at 296 (dismissing at a motion to dismiss an unjust enrichment claim

under New York law as duplicative of claims alleging violations of GBL sections 349 and 350, breach of express warranty and breach of implied warranty (citing *Corsello*, 18 N.Y.3d at 790)); *Silva*, 2015 WL 5360022, at *12 (same (collecting cases)); *Goldemberg*, 8 F. Supp. 3d at 483–84 (granting a motion to dismiss unjust enrichment claim under New York law as duplicative of claims alleging violation of GBL section 349 and breach of express warranty); *Koenig*, 995 F. Supp. 2d at 290–91 (same (first citing *Corsello*, 18 N.Y.3d at 790–91; and then citing *Ebin*, 2013 WL 6504547, at *7)).  Accordingly, the Court dismisses Plaintiff's unjust enrichment claim under New York law.

**III.  Conclusion**

For the foregoing reasons, the Court finds that Plaintiff has Article III standing but does not have standing to seek injunctive relief.  The Court grants in parts and denies in part Defendants' motion to dismiss.  The Court grants Defendants' motion to dismiss Plaintiff's claim for unjust enrichment and denies Defendants' motion to dismiss Plaintiff's claims for fraud, breach of express warranty and violations of the MMWA, as well as Plaintiff's claims under GBL sections 349 and 350.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 26, 2016
         Brooklyn, New York

41