

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

May 15, 2017

Magistrate Judge Steven M. Gold

**Re:** Cauchi v Nature's Bounty, Inc. et al., Case No: 15-cv-4199-MKB-MDG

Your Honor:

We represent plaintiff and we write in opposition to defendants' May 9, 2017 letter motion. Notwithstanding defendants' representations on March 22, 2017 that they would negotiate in good faith regarding compensation for actual costs legitimately incurred as a result of Ms. Sitt's decision to cease involvement as putative class representative, defendants have instead attempted to profit from Ms. Sitt's decision to withdraw by improperly characterizing "general work" on the case as work "directly attributable to Ms. Sitt's discovery conduct".

On April 18, 2017, roughly a month after the March 22, 2017 conference before Your Honor, the Supreme Court in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) explained that when a party is obligated to reimburse another party for attorneys' fees and costs, "the court can shift only those attorney's fees incurred because of the misconduct at issue." The Court also held that "That kind of causal connection…is appropriately framed as a ***but-for test***: The complaining party [] may recover "only the portion of his fees that he would not have paid but for" the misconduct." (internal quotations omitted; emphasis added). Here, since the claims of Ms. Sitt and Ms. Cauchi are identical, there is very little extra expense undertaken by defendant "but for" the replacement of plaintiff.

Indeed, defendants' $37,001.31 figure is wildly inconsistent with the norms of legal practice. Cancelled depositions and even replacements of named plaintiffs in class actions are hardly unusual, and thus it is difficult to understand how replacement of a named plaintiff in a consumer class action at the earliest stage of discovery justifies payment of such a high amount to defendants. Attorneys in our firm have significant experience (a combined 35 years) serving as national counsel to major national and international manufacturers in class action litigation. Attorneys in our firm also have significant experience serving as in house counsel for a Fortune 500 Company and serving as co-chair of the class action practices group in one of the largest law firms in the country. Thus, we have reviewed and processed many legal invoices by outside and local counsel retained to defend class actions. Upon reviewing defendants' invoices and billing summaries, it became apparent that the $37,001.31 figure was inflated and included costs that

cannot be shifted under *Goodyear Tire & Rubber Co. v. Haeger*. By way of example[1], defendants ask plaintiff to pay for the following:

- General case work by a presumably salaried in-house counsel that is duplicative of work performed by outside counsel. Incredibly, in support of this attempt to profit, defendants cite to *Video-Cinema Films, Inc. v. CNN, Inc.*, 2004 U.S. Dist. LEXIS 1428, at *18 (S.D.N.Y. Feb. 3, 2004). But, in that case the court explained that "ABC used its in-house counsel for this matter *rather than retaining outside counsel."* (emphasis added)[2].

- Multiple entries by outside counsel in connection with the January 13, 2017 status conference, which pertained to issues including but not limited to: a) whether the medical history of the black cohosh consumer must be disclosed; and b) defendants' failure to provide responsive ESI. (See, R. Docs. 38 and 39). There are also multiple entries pertaining to the parties' ongoing discovery dispute over whether plaintiff would provide medical information. To be clear, irrespective of whether the plaintiff is Ms. Sitt or Ms. Cauchi, any attempt to invade the consumer's privacy and obtain a medical history will be met with an objection. Indeed, at the January 13, 2017 status conference, defendants' argument that the nature of the lawsuit opened the door to inquiries about the medical history of each black cohosh consumer was largely rejected. But regardless, these are not issues unique to Ms. Sitt and for which defendants should be compensated.

- Multiple duplicative entries by a presumably salaried in-house counsel and outside counsel pertaining to defendants' misguided strategic decision to: a) oppose plaintiff's motion for leave to replace Ms. Sitt; and b) move for the sanction of having plaintiff's Complaint dismissed. Defendants were, of course, unsuccessful.

- Multiple duplicative and excessive entries regarding deposition preparation. Notably, the allegations in the Complaint and Amended Complaint are identical and there is no material difference between Ms. Sitt's claims and Ms. Cauchi's claims. Further, given that medical records are not being produced (in view of the court's directives during the January 13, 2017 status conference) there is no material difference between Ms. Sitt's discovery responses and Ms. Cauchi's discovery responses. If, arguably, defendants hired a private investigator to trail Ms. Sitt and then defendants received information from the investigator which defendants used to prepare for the deposition, defendants could conceivably argue that the deposition preparation was uniquely specific to Ms. Sitt and, therefore, not transferable to deposing Ms. Cauchi or any other black cohosh consumer. But, this was not the case. Any deposition preparation for Ms. Sitt would thus only be geared toward attempting to demonstrate that the FRCP. R. 23 factors cannot be satisfied. This is a generic preparation geared towards the standards set forth in Rule 23 and as such, the preparation is equally

---

[1] In view of the 3-page limit imposed by L.C.R 37.3, these are illustrative, non-exhaustive examples of what plaintiff asserts are improper, proposed charges.

[2] Defendants also cite to *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.,* 51 F. Supp. 2d 302, 307 (S.D.N.Y. 1999), where the court explicitly found that it was more efficient and less costly for Merck to use its in-house counsel to perform certain tasks. Here, a plain review of the invoices reveals that defendants' in-house counsel and outside counsel needlessly performed the same tasks.

applicable to deposing Ms. Cauchi.  Moreover, there are over 14 hours of time recorded in connection with preparing for Ms. Sitt's deposition.  It is simply inconceivable that this amount of time is legitimate and would actually be paid by a corporate legal department that manages outside counsel in a reasonably diligent manner.

Awarding more than the costs directly caused by the cancellation of Ms. Sitt's depositions would run afoul of the Supreme Court's direction that costs be compensatory, not punitive:

> Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.  *Goodyear Tire & Rubber Co. v. Haeger, supra at* at * 593-594.

Further, as demonstrated by the declaration of Ms. Sitt (R. Doc. 42-1, Exhibit A), on the eve of her scheduled deposition, Ms. Sitt advised counsel that due to her ongoing family obligations, and a realistic evaluation of her schedule, she came to the decision that she could no longer be involved in the suit or serve as a class representative.  And, she ultimately decided that while she remained interested in ensuring that consumers deceived by defendants obtain redress, her family obligations precluded her from devoting the time necessary to serving as class representative.  (Id.)  Plaintiff's counsel immediately informed defendants' counsel of Ms. Sitt's decision, immediately sought consent to amend the Complaint and substitute Ms. Sitt, and then when defendants refused to consent, plaintiff's counsel immediately moved to substitute Ms. Sitt.  So, while plaintiff contends there can be no showing of "misconduct" or "bad faith," insofar as defendants are nevertheless deemed entitled to attorneys' fees, that entitlement would be attributable solely to Ms. Sitt's conduct, not plaintiff's counsel's conduct.  And, defendants would, in any event, only be entitled to recover the portion of their fees that they would not have paid "but for" Ms. Sitt cancelling her depositions.  There are few, if any, billing entries by Winston & Strawn or in house counsel, Wendy Fiel that meet this standard.

We look forward to further addressing these issues during the telephonic conference with Your Honor on May 19th, and given the inflated figure being requested, we respectfully request the opportunity to more fully respond to defendants' May 9th submission before any issuance of a Report and Recommendation.

Very truly yours;

THE SULTZER LAW GROUP P.C.

Joseph Lipari